## Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company v. Collard's Administrator.

### (Decided May 17, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas No. 4).

1. Death—Action—Sufficiency of Evidence—Expectation of Pecuniary Benefits.—Declarations of the decedent that he intended to go to work and to contribute to the support of both his father and mother will support a finding of damages in their favor in an action under the Federal Employers' Liability Act.

2. Death—Damages—Amount—Sufficiency of Evidence.—In an action under the Federal Employers' Liability Act by the administrator of a decedent for the benefit of his father and mother, evidence examined and held sufficient to support a finding of $3,500.00 in favor of the mother.

.3. Death—Damages—Amount—Excessiveness.—In an action under the Federal Employers' Liability Act by the administrator of the decedent to recover damages for the benefit of the father and mother of the decedent, evidence examined and held that a finding of $6,500 in favor of the father was excessive.

4. Appeal and Error—Death—Damages—Excessive Apportionment—Prejudicial Error.—The apportionment of excessive damages to one of the beneficiaries in an action for damages under the Federal Employers' Liability Act is prejudicial error, entitling the defendant to a reversal.

5. Appeal and Error—Federal Employers' Liability Act—Death—Damages—Excessive Apportionment—Reversal.—Where, in an action for damages for death brought under the Federal Employers' Liability Act, the verdict is excessive because of the excessive apportionment to one of the beneficiaries, the entire judgment will be reversed and the cause remanded for a new trial, even though the damages apportioned to another beneficiary are not excessive.

6. Evidence—Death—Action—Deposition of Decedent.—In an action by a personal representative to recover damages for the benefit of the father and mother of the decedent, the deposition of the decedent given in the action of divorce betwen his father and mother was properly excluded, because it did not illustrate decedent's general attitude of mind towards his father, but only his attitude of mind growing out of particular circumstances which had long since passed away.

7. Evidence—Death—Action—Agreed Judgment in Another Action—Admissibility.—In an action for damages for death involving the question of the father's reasonable expectation of pecuniary benefits from his deceased son, an agreed judgment of divorce between the decedent's father and mother, by which the father surrendered the decedent to his mother during his minority, is not admissible.

8. Death—Federal Employers' Liability Act—Settlement of Claims—Effect.—After suit is brought under the Federal Employers' Liability Act by the personal representative of the decedent to recover damages for his death, a settlement by one of the beneficiaries of the action in no way affects the right of the personal representative to proceed with the action to final judgment.

CHARLES H. GIBSON and WILLIAM W. CRAWFORD for appellant.

JOHN C. GRAHAM and O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Reversing.

Samuel T. Collard, a fireman in the employ of the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, was killed in a collision near Indianapolis on May 19th, 1913. His father, Valentine T. Collard, qualified as his administrator and brought this action under Federal Employers' Liability Act to recover damages for his death. The trial resulted in a verdict for $10,000.00,

$6,500.00 of which was apportioned to the father and $3,500.00 to the mother of the decedent. The railway company appeals.

The principal ground urged for a reversal is that the verdict is grossly excessive. In this connection it is insisted that the father was not entitled to recover at all, and that the sum apportioned to the mother is largely in excess of what she should have received.

Briefly stated, the facts are as follows: Valentine T. Collard and his wife, Martha E. Collard, lived on a small farm in Grayson county, Kentucky. Several years before the accident resulting in the death of the decedent they separated, and on January 18th, 1911, Martha E. Collard was awarded a divorce from her husband. By the judgment of divorce she was awarded the custody and control of Samuel T. Collard, who was then an infant, and her husband waived and disclaimed all control over him or his services. For a short time after the separation the decedent, Samuel T. Collard, remained with his father, but upon the entry of the judgment in the divorce case he went to live with his mother and remained with her until January, 1913, when he went to work for the railway company as an extra fireman. In adjusting their property rights Valentine T. Collard conveyed to his wife a small farm consisting of about seventy-five acres. At the time of the accident this farm was fairly well stocked. While decedent was in the employ of the railway company his father owned a farm consisting of about one hundred acres, on which there was personal property worth about $125.00.

The evidence for plaintiff tends to show that the decedent performed some work for his father while living with him, and that after leaving his father's home he worked on his mother's farm. At that time there lived with his mother a grown sister and an infant brother. In the month of January, 1914, decedent left the farm in Grayson county and went to Indianapolis. There he obtained employment with the railway company as an extra fireman. While on duty his wages amounted to about $100.00 per month. At the time of his death he was twenty-two years of age and in sound health. After moving to Indianapolis he sent to his sister, who was a school teacher and lived with her mother, at one time $3.00, at another time $21.00, and at another time $30.00. The first sum was sent to pay the interest on a note which he and

his mother owed; the second sum was sent to pay on another small note which he himself owed and on which his mother was surety; the third sum was sent to discharge a note which his sister owed and which was given for a horse to be used on the farm. These were all the remittances which he made.

It further appears that some years before he went to Indianapolis he gave his father $5.00. With this exception, he never made any contribution to the support of his father. The father says that he did not work on his farm because he was too feeble to do so. He employed one or two men for that purpose and superintended their work. The last year he did not make enough to support himself. In addition to the foregoing evidence, Sherman Beatty, a witness for plaintiff, testified that he met decedent sometime before he went to Indianapolis and decedent said that he wanted to make some money so that he could help his mother and father. In this conversation he stated that he wanted to help them both; that his father was getting old and his health was failing him and he needed some assistance. John R. Langley, a farmer living near V. T. Collard, stated that in January, 1913, he saw decedent and remarked to decedent that his father might have to have some help. Whereupon decedent replied: "I will help him all I am able to. Tell him I will be down there." Decedent further said that if it took money to help his father and he worked and made it, he would let his father have it. James A. Milliner, another friend of V. T. Collard, stated that decedent in a conversation with him said that after he got to Indianapolis and got to making money he intended to help both his father and mother. Ed. Milliner testified that decedent told him that he did not have anything against his father and would help him just as quickly as he ever did. Harry Dean testified that in the winter of 1911 he saw decedent attending his father's mill and asked him what he was doing there. Decedent said that he was attending to the mill for his father, and that he thought as much of his father as he did of his mother and expected to help him out as long as he lived. W. E. Whitefield stated on the witness stand that he and V. T. Collard met the decedent one day. V. T. Collard invited the decedent to come and see him and the latter said he would. N. M. Langley testified that he met decedent a short time before his death and decedent said that he was not going to have

anything to do with the troubles of his father and mother, but that he was going to get a job and treat them both alike.

On the other hand, the testimony for the defendant tends to show that decedent's relations with his father were not very cordial and that decedent repeatedly stated that he would not help his father. For instance, two witnesses testified to the fact that on one occasion after decedent had refused to give his father his wages his father drew a knife on him and threatened to do him bodily harm. Walter Collard, a brother of decedent, testified that he heard decedent say that he would not contribute anything to his father's support. Minnie Collard, decedent's sister, says that when decedent was about to leave she begged him not to go and remarked that his father would collect his wages. Decedent replied that his father could never do that, because he would never get another cent he made. Another sister, Ida Burkhead, testified that she heard decedent say after his and his father's return from Louisville that his father would never get a dollar of his money. George Collard, another brother of decedent, testified that he heard decedent say that his father would never get a cent of his money. Another brother, Marvin Collard, also stated that he heard decedent say that he was going to stay away and work for his ma, and that his pa wouldn't get any more of his wages. Harrison Langley, a farmer friend, testified that he had a conversation with V. T. Collard with reference to his son, S. T. Collard, and that V. T. Collard said he could get along without his help, and hoped he would see the time when his son would ask for help. Mrs. Hackett testified that after the decree of divorce was entered decedent said to her that he had a new boss now and she was his mother, and he was ready to go to work and support her. He further said that he never expected to do another day's work so long as his father got his wages. Decedent's sister Minnie, also testified that decedent said he was bound to go away to work and pay his debts so that he could make a living without being in debt to his mother, and that decedent also said that he intended to return to the farm. It further appears that at the time of decedent's death V. T. Collard was sixty-six or sixty-seven years of age, while decedent's mother, M. E. Collard, was fifty-six or fifty-seven years of age, and that the former

had an expectancy of 11.48 years and the latter an expenctancy of 17.20 years.

In cases of this character the damages are such as flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the decedent had not died from his injuries. To support a recovery, therefore, there must appear some reasonable expectation of pecuniary assistance or support of which the beneficiaries have been deprived. The damage is limited strictly to the financial loss sustained by the beneficiaries. Michigan C. R. Co. v. Vreeland, 227 U. S. 59, L. Ed. 417; G. C. & S. F. R. Co. v. McGinnis, 228 U. S. 175, 57 L. Ed. 785. In construing acts similar to the Federal Employers' Liability Act many of the courts have held that in order to sustain a claim for damages it is necessary for the plaintiff to show that the deceased during his life time gave actual assistance to the beneficiaries by way of money, services, or other material benefits, which, in reasonable probability, would have continued but for his death. Hillebrand v. Standard Biscuit Co., 139 Cal. 233; Fordyse v. McCants, 51 Ark. 509, 4 L. R. A. 296, 14 Am. St. Rep. 69; Cherokee & P. Coal & Mining Co. v. Limb., 47 Kan. 469; Schnatz v. Philadelphia & R. R. Co., 160 Pa. 602; Rhoads v. Chicago & A. Ry. Co., 227 Ill. 328, 11 L. R. A. (N. S.) 625. On the other hand, other courts have sustained a finding that there was reasonable expectation of pecuniary benefit, although the evidence fell short of showing that assistance was actually rendered before death. In the case of Michigan Central Railroad Company v. Vreeland, *supra,* the leading case bearing on the question of damages under the Federal Employers' Liability Act, the United States Supreme Court declared that the federal act was practically identical with the first act which ever provided for a cause of action arising out of the death of a human being, that of 10 Victoria, known as Lord Campbell's Act. In the early English case of Franklin v. Southeastern R. R. Co., 4 Hurl. and N. 511, Pollack, J., said:

"We do not say that it was necessary that the actual benefit should have been derived; a reasonable expectation is enough, and such reasonable expectation might well exist, though from the father not being in need, the son had never done anything for him." This case was approved in Dalton v. S. E. Railway Co., 4 C. B. N. S. 303, and the latter case was cited with approval by Lord

Haldane in Taff Vail Ry. Co. v. Jenkins, A. C. 1, wherein he used the following language:

"The action is brought under Lord Campbell's Act by the father on behalf of himself and the mother for damages for the loss of the daughter. Now, we have heard a good deal of authority cited as to what the foundation of such an action is, but I do not think there is much difficulty in coming to a conclusion as to the principle which underlies those authorities. The basis is not what has been called *solatium*, that is to say, damages given for injured feelings or on the ground of sentiment, but damages based on compensation for a pecuniary loss. But this loss may be prospective, and it is quite clear that prospective loss may be taken into account. It has been said that this qualified by the proposition that the child must be shown to have been earning something before any damages can be assessed. I know of no foundation in principle for that proposition, either in statute or in any doctrine of law which is applicable; nor do I think it is really established by the authorities, when you examine them. As regards the judgment in the court below, I have already indicated that in my view the real question is that which Willis J., defines in one of the cases quoted to us, Dalton v. Southeastern Ry. Co. (1): 'Aye or no,' was there a reasonable expection of pecuniary damages?

In the case of Hopper V. R. R., 155 Fed. Rep. 277, Judge Van Devanter, now Mr. Justice Van Devanter, said:

"Another reason assigned by the circuit court for directing a verdict for the defendant was that there was no evidence of any pecuniary injury to the plaintiff from the death of the daughter. In substance, the evidence was as follows: When the deceased was 2 years old, the mother died at the family home in Texas, and shortly thereafter the child was taken by the father to an aunt near Greenfield, Mo., with whom she lived until she was 16. He then sent her to school at Parkville, Mo., that she might prepare herself for teaching, and he paid the expenses incident thereto. She had been in this school three years and was on a visit to a sister in Colorado when she met her death. She was sympathetic, ambitious, industrious, of good health, fond of her father, and wanted to keep house for him, but had not as yet rendered any service to him or made any contribution to his support.

After the mother died, the father continued to reside in Texas, but broke up housekeeping. He was chiefly engaged as a traveling machinist, and sometimes as a farm laborer; his earnings being about $50.00 per month. He had not married again, and was 60 years old. Considering this evidence in the light of natural influence or prompting of filial ties, we think it would have sustained a finding that there was a reasonable expectation of substantial, though not large, pecuniary benefit to the father from a continuance of the life of the daughter. Pierce v. Connors, 20 Cal. 178, 182; 37 Pac. 721; 46 Am. St. Rep. 279; Gibson Co. v. Sharp, 5 Col. App. 321, 327; 38 Pac. 850; Swift & Co. v. Johnson, 71 C. C. A. 619, 138 Fed. 867.''

In the recent case of Dooley v. Seaboard Air Line Railway Company, 163 N. C. 454, which arose under the Federal Employers' Liability Act, the Supreme Court of North Carolina, in a well considered opinion, also reached the conclusion that it is not necessary to prove that the son had made actual contributions to the support of the parent in order to establish a reasonable expectation of a pecuniary benefit from the continuance of the life of the son. And in the absence of a different ruling by the Federal Supreme Court, we are incline to the same opinion. A contrary rule would frequently result in great injustice. A young man who had never been in a position to render material assistance to his parents might go to work with the fixed purpose of contributing to their support, and yet his parents, who would have every reason to expect pecuniary benefits from the continuance of his life, would be denied a recovery because he was suddenly killed before he had an opportunity to render them any practical assistance. Considered from the standpoint of the mother, the question is not so material. The evidence shows that he lived on the farm with his mother and rendered her material service while there. After leaving the farm and going to work for the railroad he was in its employ only a few weeks when he was killed. During that time he used a portion of his earnings in discharging not only his personal debts, but a joint debt of his and his mother's. This evidence, we think, was sufficient to authorize the submission of the question to the jury and to support a finding in the mother's favor for $3,500.00. When we come to consider the case of the father there is considerable evidence to the effect that the son did not

intend to contribute to his support. On the other hand, a number of witnesses, who saw the son before he went to work, emphatically declare that the son stated to them that he was going to work and contribute to the support of both his father and his mother. Even though the son made no contributions to his father's support, we conclude that his declarations of purpose were sufficient to authorize a finding of damages in the father's favor. However, we conclude that a finding of $6,500.00 in his favor is excessive. The father's expectancy was only 11.48 years. In order to pay his father this sum, the son, had he lived, would, in addition to making a reasonable provision for his mother, have had to make his father a monthly allowance of about $60.00. Whether viewed in the light of the wages he was then receiving, or in the light of a possible increase of salary, which, after a few years of service, he might have obtained, it is clear, we think, that the evidence fails to show any reasonable expectation of such a sum. On the contrary, the allowance made is so high as to strike us at first blush as being the result of prejudice and passion.

But is is insisted that under the rule laid down in the recent case of Central Vermont R. Co. v. White, 238 U. S. 507, 59 L. Ed. 1433, the apportionment of the damages does not concern the defendant, and the fact that an excessive sum was apportioned to one of the beneficiaries affords no ground for reversal. That case, however, does not go to the extent claimed. It merely ruled that a failure to apportion the damages in an action by the administrator for the benefit of the widow and minor child of the decedent afforded no ground for reversal. It did not modify the rule that a failure to apportion the damages was reversible error if the defendant could show that it was injured by such failure. In the present case, however, there was an apportionment and the damages apportioned to one of the beneficiaries were excessive. By reason of this fact the amount of the verdict was largely increased and the defendant was required to pay more than it should have been required to pay. That being true, defendant was clearly prejudiced and is, therefore, entitled to a reversal.

It remains to determine whether or not the finding in favor of the mother should stand and a new trial ordered on the claim of the father, or a reversal of the entire judgment should be ordered. It seems to us that the Fed-

eral Employers' Liability Act plainly contemplates that, even where there are two or more beneficiaries, there should be but one action, one trial, and one verdict, and that in a case like this the same jury that returns the verdict should apportion the damages. On the one hand, each beneficiary is entitled to recover the pecuniary benefits of which he has been deprived by the death. On the other hand, the defendant should not be required to pay more than the aggregate of the damages sustained by each. In order to reach a conclusion that will be fair and just to the beneficiaries on the one hand, and the defendant on the other, it is necessary not only to view the claim of each beneficiary in connection with the particular facts affecting him, but to take a comprehensive survey of all the facts and circumstances bearing on the claims of all the beneficiaries and the entire liability of the defendant. This cannot be done if separate juries are permitted to find separate damages for different beneficiaries. We, therefore, conclude, that when the verdict is excessive by reason of the excessive apportionment to one of the beneficiaries, the ends of justice require that the entire judgment shall be reversed for a new trial before a jury with full power to fix defendants entire liability, and make a proper apportionment of the damages among the beneficiaries entitled to recover.

Another error relied on is the exclusion of certain portions of the deposition of the decedent given in the divorce case between his mother and father. We think this evidence was properly excluded, because it did not illustrate decedent's general attitude of mind towards his father, but only his attitude of mind growing out of particular circumstances which had long since passed away.

Complaint is also made of the exclusion of the agreed judgment of divorce, whereby the possession of the decedent was surrendered by the father to the mother. This evidence was properly excluded. The surrender of the decedent was only during his minority. It by no means follows that because, in the settlement of a divorce proceeding, the custody of a child is surrendered by the father to the mother, the father cannot entertain a reasonable expectation of pecuniary assistance from the child after he attains his majority. The circumstance is too slight to have any probative value.

During the progress of the action, Martha E. Collard, mother of the decedent, filed an intervening petition, in which she stated that she had settled with the railroad company and desired no judgment in her favor. The court refused to allow her to be made a party to the action. The defendant thereupon filed an amended answer, pleading the settlement with the mother as a bar to any recovery by the administrator for her benefit. The court sustained a demurrer to this plea and also refused a peremptory instruction directing the jury to find no damages in her favor. The right of action under the Federal Employers' Liability Act, is vested in the personal representative alone. Even a sole beneficiary cannot maintain the action, except as personal representative. Railway Co. v. Wolf, 226 U. S. 576; American Railroad Company v. Birch, 224 U. S. 547, 56 L. Ed. 879. The right to bring suit carries with it the right to employ counsel and control the prosecution of the suit. Were we to hold that a beneficiary, after suit was brought, could compromise his claim and thus defeat the action, the necessary effect would be to oust the personal representative of the control and authority conferred upon him by the statute, and confer these powers upon one who is not even a party to the action. We, therefore, conclude that the alleged compromise in no way affected the right of the administrator to proceed with the action to final judgment, and that the trial court did not err in so holding. City of Louisville v. Hart's Admr., 143 Ky. 171, 136 S. W. 212; Yelton v. Evansville & Ind. R. Co., 134 Ind. 414, 21 L. R. A. 158.

Judgment reversed and cause remanded for a new trial consistent with this opinion.