THOMPSON, J.
Roy A. Gregory, a young man 17 years old, was employed by the defendant as a laborer in the oil fields of Caddo parish. He boarded with a married sister and, in going from his boarding place to his work, had to cross Caddo Lake in a small boat or skiff. On his way to work with a companion laborer, the boat capsized, and the two were drowned.
This suit is by the father and mother of young Gregory, to recover compensation, as provided in the Employers’ Liability Act (Act No. 20 of 1914). There is no dispute as to the employment and the wages the young man was receiving, and it is admitted that he was in the course of his employment, when he lost his life. The sole defense against liability is that the plaintiffs were not actually dependent on their son to any extent, at the time he was drowned, within the intendment and meaning of the compensation statute.
The evidence is undisputed that the plaintiffs are very poor and in needy circumstances. They have no stated income and no property, except 40 acres of woodland, which produces no revenue. They lived on a small hill farm in Arkansas, which is owned by a near neighbor and which they cultivate on the share system. The owner furnishes the land, a house for them to live in, work stock, and farming implements, and he gets in return one-half of what is produced. The father is in his declining years, able to dO’ but little work, and is growing less able to work as the years come and go. The witnesses say his health is bad, and likewise that of the mother. The old couple had a large family of children, some married and moved away, others <too young to do much work. Roy remained with his parents. His neighbors say that he was industrious and hardworking. He contributed his bone and sinew, the strength of his vigorous young manhood, to the cultivation of the little farm which his father had rented. A fairly good crop was raised in 1919, the one-half of which was sufficient to meet the year’s bills for provisions and clothing, with a little left over to carry them through the winter. Young Roy was the main hand in the making and harvesting of that crop. The place was again rented for the year 1920, on the same terms. The last of November or first of December, 1919, Roy left home, with the consent of his parents, to seek employment where wages were more attractive and he could furnish more assistance to his parents. Before leaving, he told his father and mother and the owner of the farm, that he would send to his father $35 feach month out of his wages, to assist them in employing a hand to take his place in the farm work for the coming year. He made the same statement to-his sister with whom he was boarding. He got employment with tlie defendant company at $4.75 per day. He worked a little better than a month, when he met a tragic end. He did not send any of his wages of the first month, except $5 to a younger brother, having borrowed that amount to pay his way *231 seeking work; but tbe reason is explained. He bad to pay bis board and' lodging and to fit bimself up with clothing and personal effects needful to bis employment and new situation. Tbe reputation, which tbe young man bad earned, as attested by bis neighbors, exemplified in bis devotion to bis parents, and tbe faithful discharge of bis filial duty, gave bis parents every reason to expect tbe redemption of bis promise of pecuniary assistance and to look forward to such aid when tbe larder, filled by tbe fruits of bis labor of tbe previous year, began to get low.
[1] Tbe statute, under which tbe suit is brought (Act 38 of 1918), names two classes of persons who are entitled to recover compensation for tbe injury and death of an employee; (1) Those who are conclusively presumed to be dependent, and (2) those who are actually dependent upon tbe deceased employee, to any extent for support at tbe time of tbe injury and death. Those of tbe latter class are required to make proof of their dependency. Tbe plaintiffs belong to that class. Tbe position of tbe defendant is that no recovery can be had under tbe statute, because it is not shown that the plaintiffs were actually receiving from their son aid or contribution, either material or pecuniary, and which was relied upon and used by them for their support and maintenance.
[2] Under tbe law of this state, parents are entitled to receive and to appropriate to their own use, tbe earnings of their minor children, and tbe children are under a legal obligation to maintain their father and mother, when in need. O. O. 229. Tbe proof is, as we have seen, that tbe son was contributing to tbe support of his parents out of tbe crop of 1919, which bis labor helped to produce, and tbe proceeds of that crop bad not been entirely consumed when the young man left home. Tbe parents likewise bad every reason to expect pecuniary benefits from their son, under tbe promise which he bad made to them on tbe eve of bis departure. We think this situation meets tbe contention of counsel. But we cannot give our assent to such a rigorous and limited interpretation of tbe statute as contended for by counsel. In the light of tbe conditions which brought about the passage of the law, we cannot be persuaded to believe that its promoters, nor the Legislature which adopted it, ever contemplated or intended, that a construction S0‘ technical and arbitrary would or could be applied to the language used in that part of the statute under consideration. It is common knowledge that the law was enacted as the result of concession, agreement, and compromise, between employers and workmen, and common experience has confirmed the wisdom of its enactment. It was manifestly in the interest of both classes brought under its terms, as well as that of the general public. It is true the statute withdrew from the employer certain defenses, yet such employer was compensated in being relieved from vexatious damage suits and the payment of large sums arising therefrom. This affords, however, no reason for such a narrow construction in favor of the employer. To adopt the interpretation contended for would destroy the fundamental purposes of the law and result in great injustice in many instances. A right of recovery would be denied parents for the death of their son, though such death was caused by the gross and criminal negligence of his employer. It cannot be assumed that the Legislature intended to take away such right of action, a right which had been given by statute, prior to the enactment under consideration, without at the same time providing an equitable equivalent remedy by way of compensation.
The statute does not attempt to define what shall constitute “actual dependence for support to any extent,” and the court cannot make any definite inflexible rule to govern every case. Each case must be considered in the light of its own facts and at *233 tending circumstances. Our conclusion in this case is' that it is not necessary that the plaintiffs should have been actually receiving from their son, contributions or pecuniary aid at the time of his death; that the son’s parents, being in necessitous circumstances and he being a minor, that .he had contributed his personal labor, in making a crop the year previous to his death and which went to their support; and when, after the crop was harvested, the son left, with the consent of his parents, to seek employment, promising his parents to send a stated amount of his monthy wages to employ a hand to take his place, constitute the parents actual dependents to such an extent as to bring them within the meaning of the statute.
Such a construction is in perfect accord with the jurisprudence of the courts of many of the states, only a few of which cases we deem it necessary to refer to.
In Pittsburgh, C., C. & St. L. Ry. Co. v. Collard’s Adm’r, the Court of Appeals of Kentucky, 170 Ky. 239, 185 S. W. 1108, L. R. A. 1918E, 273, holds:
“It is not necessary to prove that a decedent has made actual contributions to the support of his parents in order to establish a reasonable expectation of pecuniary benefit from the continuance of his life. Point 2, syllabus, 185 S. W. 1108.
“Where decedent lived on a farm with his mother and rendered her material service, and, after going to work on a railroad, sent home earnings to discharge a joint debt of his and his mother’s, a verdict under the federal Employers’ Liability Act against the railroad on which he was killed, by which the mother was given $3,500 for his death, is justified.” Point 3, syllabus, 185 S. W. 1108.
“Where, although a decedent had not recently lived with his father, who was divorced from his mother, nor made contributions to his support, his declarations that he intended to support him authorize a verdict against the railroad on which he was killed for damages to the father, under the federal Employer’s Liability Act.” Point 4, syllabus, 185 S. W. 11Ó8.
And in the opinion in the Collat'd Case it was said:
“A young man who had never been in a position to render material assistance 'to his parents might go to work with the fixed - purpose of contributing to their support, and yet his parents, who would have every reason to expect pecuniary benefits from the continuance of his life, would be denied a recovery because he was suddenly killed before he had an opportunity to render them any practical assistance.”
In Parson v. Murphy (Supreme Court of Nebraska) 101 Neb. 542, 163 N. W. 847, L. R. A. 191SF, 479:
“Under the Employers’ Liability Act, the question of dependency is not determined by the fact that a decedent had or had not actually contributed to the support of a parent before the date of the accident. * * * But for the accident he would now, in human probability, be a wage earner and thus be in position to support plaintiff in pursuance of his promise. It is always presumed, until overcome by proof, that a man will do his duty.”
[3] The statutes which the courts had under consideration, in the cases cited, are not dissimilar to ours in any substantial respect. Indeed we are persuaded to believe that our statute is much more liberal than the federal statute. The words of the latter statute are, “the next of kin dependent upon such employee.” Whereas the language employed in our statute is, “actual dependence to any extent.” Under the federal statute, it might well be said that “dependent” means that the beneficiary could not maintain himself without the aid of the deceased relative; that he was dependent on him for a support and maintenance; and yet the courts have consistently refused to apply such a literal interpretation. Our statute does not require that the father and mother should be shown to be absolutely dependent on their son for support, before they can recover compensation on account of his death. The only requirement is that they should be actually dependent to any extent, that is to say, to some extent. The phrase, “at the time of the injury and death,” cannot be so construed as to mean at the very moment of the death to the employee. It is broad enough *235 to cover a reasonable period prior to ■ tbe death, as well as a reasonable expectation of pecuniary assistance during tbe continuance of tbe son’s life.
Tbe evidence clearly brings tbe plaintiffs witbin tbe terms of tbe statute, and, for tbe reasons assigned, tbe judgment appealed from is affirmed, at appellants’ cost.
Rebearing refused by Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.