# 8989

NO. 8989

COURT OF APPEAL

PARISH OF ORLEANS

———

JAMES T. DORMAN

versus

BOARD OF COMMISSIONERS OF THE PORT

OF NEW ORLEANS.

————

Court of Appeal
PARISH OF NEW ORLEANS
May 28/23

# 8989

Dinkelspiel; J.

This is a compensation suit.

The record establishes that the plaintiff is a widower, carrying on a small farm in the State of Mississippi, and that his son, the deceased, contributed by his labor and work on the farm from the time that he was an old enough, to the upkeep of the father, amongst other things doing light plowing and that he was undoubtedly, in 1919, a help to his father and assisted him on the farm in the manner stated.

Subsequently the boy left his father's place, going first to Yazoo City, and subsequently coming to New Orleans, where he had occassional employment, and during the course of his employment sent his father the only money that he could spare after providing himself with clothing and other necessaries of life, the small sum of five dollars. It is not shown in this record how much he earned in the course of his absence from the farm, but it is shown that in various occupations he earned but little, and that little was necessary for his own support, save and except as heretofore stated.

This suit is brought under the compensation act by the father, for the death of his son, claiming that he was dependent upon his son for support. It is proven that the father lost the services of this son when he left in February 1920, and after that the father's circumstances were of the poorest character, and the little work that he had he was compelled to employ labor to gather the crops; and the main question, in fact the only question presented for our consideration is whether under the circumstances and the law, the father was dependent on the deceased for support.

The Civil Code, Art. 229 reads: "Children are bound to maintain their father and mother, and other ascendants who are in need; and the relatives in the direct ascending line are likewise bound to maintain their needy descendants, this obligation being reciprocal."

436

The latest construction on this question was presented to our Supreme Court in the case of Gregory versus Standard Oil Company, to be found in the 151st. An. beginning at page 329, and there the court goes on to say:

"This suit is by the father and mother of young Gregory, to recover compensation, as provided in the Employer's Liability Act. There is no dispute as/the em-ployment and the wages of the young man was receiving, and it is admitted that he was in the course of his employment, when he lost his life. The sole defense against liability is that the plaintiffs were not actually dependent on their son to any extent, at the time he was drowned, within the intendment and meaning of the compensation statute.

The evidence is undisputed that the plaintiffs are very poor and in needy circumstances. They have no stated income and no property. They lived on a small farm in Arkansas, which they cultivated on the share system. The father is in his declining years, able to do but little work, and is growing less able to work as the years come and go. The last of November or first of December, 1919, Roy left home, with the consent of his parents, to seek employment where wages were more attractive and he could furnish more assistance to his parents. Before leaving, he told his father and mother that he would send a certain stipend to his parents out of his wages in order to assist them to employ others to take his place during his absence. He worked a little better than a month, when he met a tragic end. He did not send any of his wages of the first month, except $5 to a younger brother, kaxing He had to pay his board and lodging and to fit himself up with clothing and personal effects needful to his employment and new situation. The reputation, which the young man had earned, as attested by his neighbors, exemplified in his devotion to his parents and the faithful discharge of his filial duty, gave his parents every reason

437

to expect the redemption of his promise of pecuniary assistance and to look forward to such aid, xkxxxtkx as they progressed.

The statute, under which the suit is brought names two classes of persons who are entitled to recover compensation for the injury and death of an employee: (1) Those who are conclusively presumed to be dependent, and (2) those who are actually dependent upon the deceased employee, to any extent for support at the time of the injury and death. Those of the latter class are required to make proof of their dependency. The plaintiffs belong to that class. The position of the defendant is that no recovery can be had under the statute, because it is not shown that the plaintiffs were actually receiving from their son aid or contribution, either material or pecuniary, and which was relied upon and used by them for their support and maintenance.

Under the law of this state, parents are entitled to receive and to appropriate to their own use, the earnings of their minor children, and the children are under a legal obligation to maintain their father and mother, when in need. (C. C. 239. The proof is, as we have seen, that the son was contributing to the support of his parents out of the crop of 1919, which his labor helped to produce, and the proceeds of that crop had not been entirely consumed when the young man left home. The parents likewise had every reason to xxxp expect pecuniary benefits from their son, under the promise which he had made to them on the eve of his departure. We think this situation meets the contention of counsel. But we cannot give our assent to such a rigorous and limited interpretation of the statute as contended for by counsel. In the light of the conditions which brought about the passage of the law, we cannot be persuaded to believe that its promoters, nor the Legislature which adopted it, ever contemplated or intended, that a construction so technical and arbitrary would

438

or could be applied to the language used in that part of the statute under consideration. It is common knowledge that the law was enacted as the result of concession, agreement, and compromise between employers and workmen, and common experience has confirmed the wisdom of its enactment. It was manifestly in the interest of both classes brought under its terms, as well as that of the general public. It is true the statute withdrew from the employer certain defenses, yet such employer was compensated in being relieved from vexatious damage suits and the payment of large sums arising therefrom. This affords, however, no reason for such a narrow construction in favor of the employer. To adopt the interpretation contended for would destroy the fundamental purposes of the law and result in great injustice in many instances. A right of recovery would be denied parents for the death of their son, though such death was caused by the gross and criminal negligence of his employer. It cannot be assumed that the Legislature intended to take away such right of action, a right which had been given by statute, prior to the enactment under consideration, without at the same time providing an equitable equivalent remedy by way of compensation.

The statute does not attempt to define what shall constitute "actual dependence for support to any extent," and the court cannot make any definite inflexible rule to govern every case. Each case must be considered in the light of its own facts and attending circumstances. Our conclusion in this case is that it is not necessary that the plaintiffs should have been actually receiving from their son, contributions or pecuniary aid at the time of his death; that the son's parents, being in necessitous circumstances and he being a minor, that he had contributed his personal labor, in making a crop the year previous to his death and which went to their support; and when, after the crop was harvested, the son left, with the consent of his parents, to seek employment, promising

his parents to send a stated amount of his monthly wages to employ a hand to take his place, constitute the parents actual dependents to such an extent as to bring them within the meaning of the statute."

The Court goes on to say:

"Such a construction is in perfect accord with the jurisprudence of the courts of many of the states, only a few of which cases we deem it necessary to refer to."

And they cite:

"Pittsburg, C. C. & St. L. Ry. Co. v. Collard's Adm'r., the Court of appeals of Kentucky, 170 Ky. 239, 185, S. W. 1108, L. R. A. 1918E, 273; holds:

"It is not necessary to prove that a decedent has made actual contributions to the support of his parents in order to establish a reasonable expectation of pecuniary benefit from the continuance of his life. "

"And in the opinion in the Collard Case it was said:

"A young man who had never been in a position to render material assistance to his parents might go to work with the fixed purpose of contributing to their support, and yet his parents, who would have every reason to expect pecuniary benefits from the continuance of his life, would be denied a recovery because he was suddenly killed before he had an opportunity to render them any practical assistance."

"In Parson v. Murphy, 101 Neb. 542:

"Under the Employers' Liability Act, the question of dependency is not determined by the fact that a decedent is had not datamxinadxl actually contributed to the support of a parent before the date of the accident. But for the accident he would now, in human probability, be a wage earner and thus ba be in a position to support plaintiff in pursuance of his promise. It is always presumed, until overcome by proof, that a man will do his duty."

The Court goes on further:

"Under the federal statute, it might well be said that "dependent" means that the beneficiary could not maintain himself without the aid of the deceased relative; that he was dependent on him for a support and maintenance; and yet the courts have consistently refused to apply such a literal interpretation. Our statute does not require that the father and mother should be shown to be absolutely dependent on their son for support, before they can recover compensation on account of his death. The only requirement is that they should be actually dependent to any extent, that is to say, to some extent. The phrase, "at the time of the injury and death," cannot be so construed as to mean at the very moment of the death of the employee. It is broad enough to cover a reasonable period prior to the death, as well as a reasonable expectation of pecuniary assistance during the continuance of the son's life."

Defendants in their able brief contend that in the first case cited the son left home with the consent of his father, but in this case the boy left home without the consent of his father, and it is further contended the boy promised to send money home in support of his parents, and in this case no such promise was made.

The decision quoted in our opinion does not in any wise change the situation in this case. Whilst it is true that the boy in this case left his father on his own volition and without the father's consent, and without promising anything, nevertheless, under the article of the Civil Code, quoted above, and under the decision referred to in this opinion, we are convinced that that was immaterial, and we so hold.

The proof is abundant that the deceased helped and aided his father on the farm in the year 1919, and did everything he could, being only a boy of about fifteen years of age, in aiding his father in cutting up the land and helping him to work the farm. His going away without consent, or

441

without informing his parents, neither changes the law nor the statute. The fact that on reaching the first point and the very first money that he could spare he sent to his father, proves conclusively that he if he had lived he would have done all in his power to aid his father, he knew the father's circumstances and condition, and showed his disposition to help him whenever he could. Unfortunately he was killed whilst in the employ of the defendant, and after he had worked only for a short period of time; and, therefore, the parent is entitled to what the Judge of the lower Court allowed him, under the law.

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment of the Court a quo be and the same is hereby affirmed, costs of both courts to be paid by the defendants.

--Judgment affirmed--