## JOSEPH v. BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS

(January 31, 1927. Opinion and Decree.)
(February 14, 1927. Rehearing Refused.)
(March 28, 1927. Writs of Certiorari and Review denied by Supreme Court.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Master and Servant —Par. 160.**

Compensation is due dependent niece and nephew where the deceased uncle, who left no minor children of his own and no widow, was living in the household with them at the time of his death, was actually paying the rent and furnishing them with clothes and groceries.

(Note: The recent amendment of Act 20 of 1914 is Act 85 of 1926.—Editor's note.)

Appeal from Civil District Court, Division "C". Hon. E. K. Skinner, Judge.

Action by Mary Joseph, et al., against Board of Commissioners, Port of New Orleans.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

George Piazzo, of New Orleans, attorney for plaintiff, appellant.

Arthur McGuirk, of New Orleans, attorney for defendant, appellee.

JONES, J.   On May 2, 1914, Louis Bell, while working for the Board of Port Commissioners, was killed by an electric wire.

He left no widow, no dependent children and no parents. This suit for compensation was brought by his sister, Mary Joseph, for her minor child, Adele Joseph, a niece of the deceased, and by his niece, Elvera Honore, for her minor child, Leonard Honore, a grand nephew of the deceased.

The allegation is made in the petition and the proof shows that Louis was living at the time of his death at the home of Mary Joseph, with all of the above named parties, and that he, for several months, had been contributing regularly to the two minors, who were actually being provided by him at the time of his death with food and clothing.

Defendant, after admitting the other allegations, denies dependency.

The case was tried twice in the lower court, because the official stenographer died before he transcribed his notes. On the first trial judgment was given for defendant upon the ground that plaintiff had failed to prove dependency, and a like judgment was given after the second trial, although in his reasons for the second judgment the judge found that the evidence was at variance with that given at the first trial, because it showed that the minors were "dependent upon the deceased".

Dependency is the sole question before us.

Four witnesses for the plaintiff testified that the deceased had lived for several months prior to his death at the home of his sister with the two minors and that he bought both food and clothes for them regularly.

One of the plaintiffs, Mary Joseph, testified that she did washing and ironing for a living, employing extra help when the work justified; that sometimes she had three dollars and sometimes five dollars after paying the hands; that her brother, who came to live with her seven or eight months before his death, gave the children shoes and clothes, bought groceries, and on the first and fifteenth of each month gave her nine dollars to pay the rent, which was twenty dollars per month; that her daughter, Adele, was then eighteen, and her grandson, Leonard Honore, was eight; that both husbands were still alive when last heard from, but had deserted their wives and contributed nothing to their support.

Defendant, who produced no witnesses, argues as follows:

1st. That plaintiff's testimony is unworthy of belief, because four of the witnesses did not testify on the first trial.

2nd. Because the eighteen dollars paid monthly by the deceased was for board and was not a contribution to the support of the minors.

3rd. That the household in which the deceased lived was not his household and that the "dependency", if any, is not "within the meaning of the statute". To sustain this argument he quotes the case of Haag vs. E. Z. Opener Bag Co., 7620, Court of Appeal, where this court held:

"Employers' Liability Act No. 20 of 1914, amended by Act 243 of 1916, uses the term 'family of the deceased employee' not in the sense of blood relationship, but in the sense of membership in his household or subject to his authority."

In answer to the first argument we say that we must take the record as we find it and that we cannot refuse to consider the unimpeached and uncontroverted testimony of these four witnesses simply because they did not testify at the first trial,

and, even if we did, the testimony of Mary Joseph would still be controlling, as her statements are uncontradicted.

In answer to the second argument, we say that there is not proof that the money was paid for board. Mary Joseph says: "He didn't pay no board. He stayed there like he was their father and he did for them."

Albertine Lyons testifies that she saw the deceased buy shoes and clothing for the children and the other three witnesses testify that Louis Bell had told them he was supporting the minors.

Furthermore, this court, in the case of Rosenblath vs. Pierce, No. 7856, Court of Appeal (Orleans), held as follows:

"It is immaterial whether the amount paid by each one is called a contribution or board, or whether it is more or less than the value of the board. The fact is that each paid in a part and that the whole was used to pay the expenses. * * * If the weekly payment by both sons had been cut off, the father would have been left with only forty dollars, an amount insufficient to support himself, his daughter and her two children. If the amount contributed by any one of the two sons had been withdrawn, the ability of the father to provide for himself and family would have been reduced that much. When Bernard's twenty dollars ceased to come in, the dependency of plaintiff upon that amount was affected to that extent."

Here the evidence shows that Mary Joseph's greatest earning after paying all expenses was five dollars per week; that the rent was twenty dollars per month; that she had no property and had been given fifteen cents carfare.

In answer to the third argument we quote Par. (h), Subsection 2 of Section 8, Act 247 of 1920, which reads in part as follows:

"Compensation to the brothers and sisters and other members of the family of the deceased employee not hereinabove specifically provided for, if such brother or sister or other members of the family not otherwise specifically provided for was actually dependent on the deceased employee for support to any extent at the time of the injury or death thirty per cent of wages for the brother or sister or other dependent member of the family and ten per cent additional for each additional such brother or sister or other dependent."

In construing this paragraph the Supreme Court said, in the case of Heinzelman vs. Board of Commissioners of Port of New Orleans, 149 La. 215, 88 South. 798:

"'Dependent to any extent' is a very broad term, and seems to us to include necessary aid furnished for the discharge of any legal obligation, as well as aid required merely in supplying the personal wants of the recipients."

In Gregory vs. Standard Oil Co., 151 La. 228, 91 South. 717, the Supreme Court allowed compensation to the dependent parents, although the minor son was living away from home with his married sister and had not contributed to his parents out of his first month's salary.

It is true that this court in the case of Haag vs. E. Z. Opener Bag Company held that the nephew and niece were not entitled to compensation, although they were dependent upon their uncle to some extent, because they were not living with him in his household at the time of his death and were not subject to his authority, but were residing elsewhere. Although that case was decided in 1919 after the original compensation act, namely, Act 20 of 1914, had been amended by Act 243 of 1916, the court quotes approvingly this provision from the original act which had been omitted in the amended statute:

"No person shall be considered dependent unless a member of the family of or bearing to him the relation of husband or wife or descendant or ascendant or brother or sister or legally adopted child," and then concludes that "the word family is used not in the sense of blood relationship but in the sense of membership in his household or subjection to his authority."

The paragraphs in the present act pertinent to this point, namely, 247 of 1920, under which this suit was brought, are as follows:

(k) "Compensation shall be payable under this section to or on account of any child or brother or sister or other dependent member of the family not otherwise specifically provided for, only if and while such child, brother, sister or other dependent member of the family, not otherwise specifically provided for, is under the age of eighteen years, unless such child, brother, sister or other dependent member of the family is mentally or physically incapacitated from earning a living."

(l) "No compensation shall be payable under this section to a widow unless she be living with her deceased husband at the time of the injury and death, or be then actually dependent upon him for support. No compensation shall be payable under this section to a widower unless he be living with his deceased wife at the time of the injury and death or be at such time incapable of self-support and actually dependent upon her for support.

(m) "The term 'child' and 'children' shall cover only legitimate children, acknowledged illegitimate children, stepchildren, posthumous children and adopted children. The term 'brother' and 'sister' shall include step-brothers and step-sisters and brothers and sisters by adoption."

(n) "In all cases provided for in this section the relation of dependency must exist at the time of the injury and at the time of the death."

These amendments and many of the recent decisions of the courts (quoted below) tend to show that "actual dependency to some extent" rather than the fact that the minors were residing in the household of deceased at the time of his death is the controlling factor in fixing liability for compensation.

In this case the deceased uncle was living in the household with the minors; was actually paying eighteen dollars on the rent every month and was occupying one of the bedrooms in the three-room cottage. Although the house had been occupied by Mary Joseph and the other minors before he came to live with them seven or eight months prior to his death, we think that the evidence shows that the household was sufficiently subject to his authority to fall within the statute at the time of his death. On this point Mary Joseph says (p. 19):

"When he come to live with me, I was sick there and I had a little washing but not very much, but since the separation of me and my husband, my brother helped me with the children, because I had a trifling husband, and he encouraged me to leave the man, that he would support the child."

And on page 20:

"He stayed there, I think, about seven or eight months; that he had been living there in the house with me, but before that he give the children anything they wanted, and after my health got so bad, he came and lived altogether in the house with us."

These statements tend to show that the deceased came to live with his sister, because of her illness, and presumably to relieve her in part of the rsponsibilities of managing as well as supporting the inmates.

Furthermore, the courts have repeatedly held that the act must be literally construed.

Rome vs. Mexican Petroleum Cor., 3 La. C. A. 523 (Orleans):

"Liberal interpretation is the rule of reason governing courts in compensation cases and no definite inflexible rule can be established. Each case must be considered in the light of its own facts and attending circumstances."

Dick vs. Gravel Logging Co., 152 La. 993, 95 South. 99:

"The object of the statute is to shift the burden resulting from the accidents of our intense industrial activities from the employer to the general public. It is humane in its purpose and its scope should be enlarged rather than restricted. Its provisions should be liberally construed so as to include all services that can be reasonably said to come within them."

In Lemieux vs. Cousins, 154 La. 814, 98 South. 255:

"From the foregoing it is clear that this court has put itself of record as meaning to carry out liberally the provisions of the Workmen's Compensation Law, the manifest intent and spirit of which is that no injured workman, who promptly and seriously claims compensation, shall be deprived of the compensation due him by any technical or formal or strained construction of the act."

See also Dyer vs. Rapides Lbr. Co., 154 La. 1091, 98 South. 677, and Jones vs. Powell Lbr. Co., 156 La. 767, 101 South. 135.

For the above reasons the decision of the lower court is reversed.

As Adele Joseph, one of the minors, became eighteen years of age on September 24, 1926, her compensation only ran from May 2, 1924, to September 24, 1926, a total of 120½ weeks. It is admitted that the wages of deceased were nineteen and 20-100 ($19.20) dollars per week, and the statute allows forty per cent for the two minors during the 120½ weeks and thirty per cent thereafter for the remaining 179½ weeks.

It is therefore ordered, adjudged and decreed that there be judgment in favor of plaintiffs for their minor chidlren and against defendant in the sum of one hundred ahd fifty and 00-100 ($150.00) dollars for funeral expenses, together with five per cent interest from judicial demand.

It is further ordered, adjudged and decreed that there be judgment in favor of the plaintiffs for their minor children, compensation at the rate of seven and 68-100 ($7.68) dollars for 120½ weeks, and in favor of plaintiff, Elvera Honore, for the minor, Leonard Honore, at the rate of five and 76-100 ($5.76) dollars per week for 179½ weeks, with interest at five per cent on each weekly payment from the time it became due until paid.

ON  PETITION  FOR  REHEARING

The judgment is amended by strikitg out the item of $150.00 allowed for funeral expenses, and as thus amended the rehearing is refused.