**SOUTHERN RAILWAY COMPANY,**
Appellant,

v.

**W. W. NEESE, Administrator of the Estate of William Neese, deceased,**
Appellee.

**No. 6869.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 20, 1954.

Decided Nov. 10, 1954.

John Gregg McMaster, Columbia, S. C. (Frank G. Tompkins, Jr., Columbia, S. C., on brief), for appellant.

Henry Hammer, Columbia, S. C., and James P. Mozingo, III, Darlington, S. C., (Archie L. Chandler, Greenville, S. C., and Benny R. Greer, Darlington, S. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a civil action brought in the United States District Court for the Eastern District of South Carolina by the Administrator of the Estate of William Neese to recover damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, for the death of William Neese, allegedly caused by the negligence of the Southern Railway Company (hereinafter called Southern), a railroad engaged in interstate commerce. At the conclusion of all the evidence, Southern moved for a directed verdict, asserting that there was not sufficient evidence of its negligence to go to the jury. This motion was denied and the jury returned a verdict for $60,000.00 in favor of the Administrator. Southern then moved for a judgment *non obstante veredicto* or, in the alternative, for a new trial, on the score that the verdict was excessive and based upon passion. This motion was denied. The Court, however, felt that the verdict was excessive and ordered that it be set aside and a new trial granted unless $10,000.00 of the verdict was remitted by the appellee. Remittitur was duly made and judgment was entered for $50,000.00.

Southern has appealed to us. Two questions are presented: (1) was there sufficient evidence of Southern's negligence to warrant submission of the case to the jury? and (2) did the District Court abuse its discretion by refusing to grant Southern's alternative motion for a new trial on the question of damages? The answer to both questions, we think, must be in the affirmative. The District Court, therefore, must be reversed in part and the case remanded for a new trial on the question of damages.

William Neese, about twenty-two years old, was a car inspector in Southern's freight yards at Columbia, South Carolina. A little after 9:30 o'clock on the night of July 5, 1950, his mutilated body was found lying beside track number six in the West Yard. He had been cut in two. His lower torso was found at a spot about 140 feet from where his head and shoulders were lying.

At about 9:15 o'clock that evening, Southern's train Number 52, consisting of an engine and seventy-six freight cars, pulled into the West Yard on track Number 5. The engine was disconnected from the train of cars, and after the brakeman threw a switch, the engine backed down track Number 6 to pick up a conductor and a switchman. The brakeman testified that he saw and spoke with a young man at this time. The engineer also testified that he saw a young man in a rain coat walking along between tracks Numbers 5 and 6 just before he backed onto track Number 6. After Neese's body was found, traces of blood and flesh were found on the rear of this engine and its tender.

No whistle or bell was sounded by the engine prior to its backing up, and evidence was introduced to show that no bell or whistle is required to be used on the part of engines in the yard. No lookout was posted on the rear of the tender as the engine backed up. All the parties present on the engine as it backed testified that a small light was burning on the rear of the tender. Appellee introduced one witness, however, who testified that he had watched Number 52 pull into the yard and watched it back into track Number 6 and that he saw no light showing at the rear of the tender and that he would have seen one if it had been burning.

Although Southern was attempting to make repairs, the tower lights were out in the West Yard at the time of the accident, due to a broken insulator. The night was dark and rainy but there is no testimony to indicate that the tower light had been put out by the storm.

The Federal Employers' Liability Act, 45 U.S.C.A. § 51, imposes

upon a railroad engaged in interstate commerce the duty of furnishing its employees with a safe place in which to work. Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Bailey v. Central Vermont Ry. Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444. Whether the railroad has been negligent in discharging this duty is a question to be determined by the jury, Bailey v. Central Vermont Railroad Co., supra, unless " * * * the evidence is such that. without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, * * * " in which case the court should direct a verdict for the railroad if the conclusion is that no negligence exists. Brady v. Southern R. Co., 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239.

In view of the evidence presented at the trial, we cannot say that the only reasonable conclusion is that Southern was not guilty of negligence in providing a safe place for its employees to work. The questions of whether a light was shown, whether Southern was negligent in repairing the tower light and whether a lookout was necessary in the dark yard, were certainly for the jury. The District Court was quite correct in refusing to direct a verdict.

There is no merit in Southern's contention that a verdict should have been directed since Neese assumed the risks incident to his job. Referring to a suit under the Federal Employers' Liability Act, Justice Black speaking for the Supreme Court of the United States in Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 55, 67–68, 63 S.Ct. 444, 451, 87 L.Ed. 610, said:

"No case is to be withheld from a jury on any theory of assumption of risk and questions of negligence should under proper charge from the court be submitted to the jury for their determination. * * * 'Where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences', the case should go to the jury."

This principle, enunciated in a case factually similar to the instant one is not altered or qualified by the Court's decision in Brady v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239.

The second question presented by Southern is whether the District Court abused its discretion in refusing Southern's alternative motion for a new trial on the ground that the amount of the verdict was not supported by anything in the record.

The Federal Employers' Liability Act, 45 U.S.C.A. § 51, provides in part that every railroad engaged in interstate commerce that negligently injures an employee: " * * * shall be liable in damages * * *, in case of the death of such employee, to his or her personal representative, for the benefit * * * of such employee's parents". Where death has occurred, the damages recoverable by the personal representative are not unlimited but are restricted to compensation for loss of the reasonably expected pecuniary benefits which would have resulted to the beneficiaries from the continued life of the deceased. Chesapeake & Ohio R. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117; Chicago, B. & Q. R. Co. v. Kelley, 8 Cir., 74 F.2d 80. The verdict of the jury is to be based upon the present value of such anticipated future benefits. Chesapeake & Ohio R. Co. v. Kelley, supra; Thompson v. Camp, 6 Cir., 163 F.2d 396, 398, certiorari denied, 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378. The question, then, is what contributions could Neese's parents reasonably have expected from their son over the years.

Neese was 22 years old, his mother 47 and his father was 60 years old, at the time of the accident. Although proof of actual aid given to the surviving parents during the life of the deceased is not necessary to a recovery, it is a helpful factor in determining the amount of benefits which the parents could reasonably have expected to receive in the future. Moffett v. Baltimore & Ohio R. Co., 4 Cir., 220 F. 39; Tobin v. Bruce, 39 S.D. 64, 162 N.W. 933, certiorari denied 245 U.S. 18, 38 S.Ct. 7, 62 L.Ed.

123; Pittsburgh, C. C. & St. L. Railway Co. v. Collard's Administrator, 170 Ky. 239, 185 S.W. 1108, L.R.A.1918E, 273.

The parents of Neese testified that he always gave his full pay check to "Daddy" and told him to use it as he pleased. They testified that during the three years he worked for Southern he had contributed at least thirty or forty dolllars per month to the family and at the last had contributed as much as seventy-five dollars per month. His mother testified that Neese had purchased two radios, a dinette, a sofa and a bed for the family, representing an investment of about $230.00. She also testified that she had expected Neese to contribute as much $2,500 a year to her support after the retirement of Neese's father who, at that time, was making $4,300.00 a year as a car inspector for Southern. Young Neese had expressed a desire never to marry and the parents testified that they expected he would continue to live with them.

Southern introduced evidence of young Neese's work record which showed that his total take-home pay for the three years and fifteen days he had worked had been $6,544.79. The records of the Standard Building and Loan Association show that Neese had saved $4,984.93 during this same period. The deposits to this account, with about four minor exceptions, were made at approximately the same times that Neese had received his pay checks. These deposits covered all but $1,619.30 of the entire net salary which Neese received during the three years he worked, or all but an average of about $43.76 per month. No withdrawals were made from this account until after the death of Neese. Logically, this $43.76 per month would seem to be the maximum possible contribution Neese could have made on the average over the three years, assuming he spent nothing on himself. However, for the purposes of this decision, we shall accept the testimony of the parents that he contributed as much as $75.00 per month just before he died and never less than thirty or forty dollars per month at all other times. On a percentage basis, then,

Neese was contributing about one-fourth of his salary to his parents.

If he continued in his present work, he would probably have attained a salary of $4,300.00 per year, the gross salary his father received for the same position at the age of sixty. Yet, Mrs. Neese testified that she had expected a contribution of $2,500.00 per year when Mr. Neese retired in about four or five years. In view of the circumstances was this expectation reasonable? We think not. If we assume, however, that the parents reasonably could have expected an average contribution of $100.00 per month for the rest of their lives, what is the present value of such an expectation? The $100.00 figure is based on an assumption that Neese would have contributed at least one-fourth of the $4,-300.00 per year salary he could have reasonably expected to make in the future. He would not have made this salary for some time so his contributions would have had to have been larger later on. We shall assume these optimum conditions.

The expert testimony of an actuary indicated that the present cost of an annuity at $3\frac{1}{2}\%$ on the life of Mrs. Neese which would yield $100.00 a month was $18,035.40. Mrs. Neese's life was used because she is the younger of the parents and is expected to live longer. At 3% the annuity would cost $19,051.00. If we assume, however, that it was reasonable for Neese's parents to have expected a contribution of $2,500.00 per year from the date of Neese's death, not merely from the date of Mr. Neese's retirement, what is the present value of such an expectancy? If we accept this fantastic assumption, the present cost of an annuity to provide such an income for Mrs. Neese's lifetime is only about $37,-000.00 at $3\frac{1}{2}\%$ and about $39,000.00 at 3%. Even under the most unreasonable expectations voiced by the parents, it is not necessary that a fund of $50,-000.00 be provided by Southern.

$50,000.00 invested at 5%, would yield $2,500.00 a year, which is considerably more than young Neese's average yearly "take home pay" of $2,181.60, for the

three years and fifteen days that he worked for Southern before his death. The same sum, invested at 4% would give an annual yield of $2,000.00, which is over 90% of this average "take home pay." In each of these instances, the principal sum would, of course, remain intact.

A total contribution of $50,000.00 by young Neese to his parents, had he and they lived out their normal expectancies, seems to us far beyond the pale of any reasonable probability and entirely without support in the record. See Wetherbee v. Elgin, J. & E. R. Co., 7 Cir., 191 F.2d 302; Virginian R. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 4 A.L.R.2d 1064; Cobb v. Lepisto, 9 Cir., 6 F.2d 128; Sheehan v. New York, N. H. and H. R. Co., D.C., 18 F.Supp. 635, 637. In the case of Virginian R. Co. v. Armentrout, supra, this court said [166 F.2d 407]:

"Ordinarily, of course, the amount of damages is for the jury, and whether a verdict should be set aside as excessive is a matter resting in the discretion of the trial judge. This, however, is not an arbitrary but a sound discretion, to be exercised in the light of the record in the case and within the limits prescribed by reason and experience; and where a verdict is so excessive that it cannot be justified by anything in the record or of which the court can take judicial notice, it is the duty of the judge to set it aside. Failure to do so is an abuse of discretion, analogous to error of law, and as such reviewable on appeal."

The judgment appealed from will accordingly be affirmed in so far as it adjudges liability on the part of defendant for Neese's death but will be reversed for failure of the judge to set aside the verdict as to damages, which is without support in the record even as to the amount to which it has been reduced, and the case will be remanded for a new trial confined to the issue of damages.

Affirmed in part; reversed in part and remanded.