No. 2137

Second Circuit Appeal

---

MATTHEW NELSON v. W. K. HENDERSON IRON WORKS & SUPPLY CO.

---

(October 31, 1924, Opinion and Decree)
(January 12, 1925, Rehearing Refused)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant— Par. 160.**
Under the Employers' Liability Act No. 20 of 1914, Section 8, Subsection 2 (g), a father can recover compensation for the death of his son if he was dependent on him to any extent. This is true even though the father, through error, signed a sworn statement that he was not dependent on his son, if the proof shows that he was dependent to any extent.

(The recent amendment is Act 216 of 1924.)

Appeal from the Parish of Caddo, Hon. E. P. Mills, Judge.

This is a suit to recover compensation under Employers' Liability Act No. 20 of 1914. The sole question is one of dependency of a father on his minor son, under Section 8, Subsection 2 (g).

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

M. D. Dimitry, of Shreveport, attorney for plaintiff, appellant.

Barnette & Roberts, of Shreveport, attorneys for defendants, appellees.

PORTER, J. The plaintiff sued for compensation under the Workmen's Compensation Law of this state for the death of his minor son, who was killed by an explosion while he was employed by the defendant company and in the course of his employment. The material facts disclosed by the testimony are undisputed.

At the time of the fatal accident the deceased was 20 years old. His father, the plaintiff, is a negro preacher, and is the pastor of two country negro churches, which paid him, both together, a salary of $40.00 per month. At the time of the death of his son he was living in Shreveport in a rented house, and his family consisted of himself; his wife, the stepmother of the deceased; a daughter, 18 years old, and the deceased. The daughter was at school at the Lincoln Parish College, Grambling, La., and her brother, the deceased, contributed at least $20.00 per month to defray her expenses there. He

also paid the same amount for board at his father's house.

Shortly after the death of plaintiff's son, the representatives of the indemnity company, which is the real defendant, secured from plaintiff the following statement:

"State of Louisiana,
"Parish of Caddo.

"Before me, the undersigned authority, personally came and appeared, Matthew Nelson, father of Ed Aubry Nelson, a resident of Shreveport, La., who, being by me first duly sworn, deposes and says that his occupation is that of minister of the Gospel, and that he and his family were not dependent upon his son, Ed Aubry Nelson, for a livelihood.

(Signed) "MATTHEW NELSON.

"Sworn to and subscribed before me at Shreveport, La.; on this, the 13th day of October, 1923.

"LAWRENCE G. PUGH,
"Notary Public."

Admittedly, the sole question is:

Was the plaintiff at the time of the death of his son "actually dependent upon him to any extent"?

We might say, to begin with, that we attach but little importance to the statement signed by the plaintiff. Even if he had been properly advised as to his rights —which he was not—his statement was no more than a conclusion of law on his part, and is not binding upon him or the court. He testifies that he did not understand what he had signed, and that he signed it for the purpose of getting a settlement from the company. He says that after he signed the paper, the gentleman who prepared it—a representative of the indemnity company—told him that he would hear from the company in a few days. And we think his testimony as to his purpose is true; otherwise, we should be compelled to believe that he intended to renounce, without any consideration whatever, his claim against the company. This is something that common experience teaches us

rarely, if ever, happens. Moreover, if he was given any information as to his rights, it is more than probable that such information was incorrect. We say this because of the testimony of defendant's witness, Mr. Shipley, the local agent of the company that carried the insurance. He and Mr. Hupp, of New Orleans, the head of the claim department, who did not testify, were present when the document was signed, after it had been prepared by Mr. Hupp. Mr. Shipley says that he did not explain to plaintiff what dependency meant further than asking him if he looked to his son for support, which question plaintiff answered in the negative. And Mr. Shipley, who, to his credit it may be said, is an unusually fair and candid witness, shows by his testimony that he did not himself have a very clear understanding of the matter. He does admit, however, substantially, that the phrase above quoted ought to be interpreted in the light of the facts in each case, and in this we fully agree.

Parents by the act of marrying contract the obligation of supporting, maintaining and educating their children, and children are under the reciprocal obligation of maintaining their parents when in need. C. C. Arts. 227 and 229.

We do not understand that the Code intends that the discharge of this reciprocal obligation depends upon a condition of actual poverty or penury on the part of the parents or children, and we are quite sure that no such harsh or literal sense is contemplated by the Workmen's Compensation Act.

Leaving aside the twenty dollars a month board bill, which helped to defray the plaintiff's household expenses, the sum which the son contributed to the education of his minor sister discharged a legal and moral obligation resting upon his

father and thus made it possible for the latter to devote more of his meagre salary to the support of himself and the rest of his family. It was a substantial, if indirect, contribution by the son to the support of his father.

The father's total income was forty dollars a month. He lived in Shreveport, in a rented house, and even if he had been required to support himself alone this amount would not have been too much. To say that he did not need the assistance furnished by the son is preposterous, and if he needed it, he was dependent upon the son to some extent.

This court was the first appellate tribunal in this state to interpret the phase, "actually dependent to any extent." In the case of Hand et al. vs. Gulf Refining Co., No. 1534 in our docket, where the plaintiff, owning a farm, live stock and implements worth $7000.00, out of debt, and with a good credit, was held to be dependent upon his minor son to some extent and entitled to recover for his death. In that case, we said:

"We find that his deceased son had assisted him a short time before his death in preparing the farm for planting and cultivation that year; that he had relieved his father of the financial burden of his (the son's) further education; that he was contributing a substantial sum to the education of a young sister, and to that extent relieving his father of that financial burden; and that out of his wages he contributed something in the way of money or clothes to his father.—Act 20 of 1914— the first workman's compensation law, and all of its various amendments down to and including 1920—describes the persons who are entitled to compensation, in case of the death of a workman, as 'actually dependent to any extent' upon the workman at the time of the accident; see paragraph 9, Section 8, page 470, Act 247 of 1920.

"The modification of the term dependent by the words 'to any extent' precludes the interpretation of that term in a literal or absolute sense. Indeed, the original act expressly recognizes 'partial dependency.' It provides that:

" In all other cases questions of legal dependency, in whole or in part, shall be determined in accordance with the facts as they may be at the time of injury.'

"And in the same section and paragraph it provides for the distribution of the compensation between those who are 'partially' dependent—if there are none who are wholly dependent—according to the relative extent of their dependency.' Section 8, Subsection 2, paragraph C. 9, 52, Act 20 of 1914."

The Supreme Court in at least two recent and well-considered opinions fully discussed the provision in question. We refer to Gregory vs. Standard Oil Co., 151 La. 228, 91 South. 717, and Hamilton vs. Texas Oil Co., 151 La. 692, 92 South. 301.

In the Gregory case, it is true that the parents of the 17-year-old minor son, for whose death they were claiming compensation, were, perhaps, in more straitened circumstances—were more nearly in a condition of absolute want—than is the plaintiff here. They lived on a 40-acre hill farm in Arkansas, which they rented from the owner, and worked on the half-share system. The son in the cultivation of the crops for the year, which was sufficient to meet the current bills with a little left over to carry them through the winter. About the last of November the boy left, with his father's consent, for the oil fields, promising to send his father $35.00 a month out of his wages. He did not send anything out of his first month's wages, but that was explained by the fact that he was compelled to buy clothing and equipment and to return an amount which he had borrowed when he left home for the expenses of his trip—and his death occurred before the end of the second month. The defendant resisted payment, for the reason that it was not shown that plaintiff was receiving assistance from the son at the time of

his death. The court said that, in addition to the work which the boy had performed in making the crop, his parents had a right to rely upon the promise of the deceased to send them the above stated amount monthly (citing authorities from other states), and that this constituted dependency under our statute. If noted the fact that in the interpretation of the Federal Employers' Liability Act, which does not contain the qualifying words, "to any extent," and under which the court said: "It might be well said that 'dependent' means that the beneficiary could not maintain himself without the aid of the deceased relative; that he was dependent upon him for support and maintenance; and yet the courts have consistently refused to apply such a literal interpretation. Our statute does not require that the father and mother should be shown to be absolutely dependent on their son for support before they can recover compensation for his death. The only requirement is that they should be actually dependent to any extent, that is to say, to some extent." The court affirmed the judgment which held the defendant company liable.

In the Hamilton case, above cited, the suit was for compensation for the death of a minor son, who was about 20 years old, by both parents. The father, the deceased and a younger brother were working for the same employer and they pooled their wages, which aggregated something over $400.00 per month, which was spent in paying the living expenses of the family. The court said that it did not appear that they lived "extravagantly or beyond what was reasonably appropriate and necessary to their station in life," and held that a condition of dependency existed under our statute. It said:

"Of course, a family of eight could have existed on less than that which was earned, but we do not believe it was intended under the compensation statute that dependents should be denied its benefits, except in cases of actual want and suffering."

A statement filed by the defendant company shows that the deceased worked four days the first week of his employment, seven days—including Sunday, on which day he worked six and one-half hours—the second week and three days the third week. He was killed the latter part of the third day. He received 35 cents an hour, and the statement shows the total number of hours. The total amount which he received was $60.35. This, divided by 15 days—total number of days worked—gives a daily wage of $4.02 and a small fraction. The above sum multiplied by six—the number of working days in a week—gives a weekly wage of $24.12. The plaintiff is, under the statute, entitled to 30% of this amount for 300 weeks. Because the deceased worked a few hours on one Sunday, plaintiff's counsel appears to think the payment ought to be based on a seven-day week. We do not think so. There is no evidence to support a seven-day week contract. The fact that deceased worked a part of one Sunday is not sufficient to prove it.

The judgment appealed from is, for the foregoing reasons, reversed and set aside, and it is now ordered and decreed that the plaintiff, Matthew Nelson, do have and recover judgment against the defendant, W. K. Henderson Iron Works & Supply Co., in the sum of $7.24 a week during the period of 300 weeks, beginning on the 9th day of October, 1923, with legal interest on the said amounts from maturity.