No. 2257.
Second  Circuit  Appeal.

W. R. CAUTHORN ·ET AL. v. CYPRESS TANK COMPANY.

(November 21, 1924, Opinion and Decree)
(March 17, 1925, Opinion and Decree on Rehearing)

(*Syllabus by the Editor.*)

1. **Louisiana  Digest—Master  and  Servant Par. 160.**

Under the Employers' Liability Act No. 20 of 1914, Section 8, Subsection 2 (g), a father, dependent to any extent on his son's support, may recover for his son's death.

2. **Louisiana  Digest—Master  and  Servant Par. 160.**

Where a son agreed to help his father buy a 126-acre tract and actually sent him $100.00 for that purpose, besides sending him money and presents at various times, held, that this constitutes sufficient dependency to enable the father to recover for the death of his son, under Employers' Liability Act 20 of 1914, Section 8, Subsection 2 (g) and Section 39.
(Note: The recent amendments are: Section 8 amended by Act 216 of 1924 and Section 39 amended by Act 38 of 1918.   Editor's note.)

Appeal from the First District Court, Parish of Caddo, Hon. J. H. Stephens, Judge.

This is a suit under the Employers' Liability Act No. 20 of 1914, brought by the father for the death of a son.

Judgment for plaintiff and defendant appealed.

Judgment affirmed.

Joe B. Hamiter of Shreveport, attorney for plaintiffs and appellees.

Barnette & Roberts of Shreveport, attorneys for defendant and appellant.

PORTER, J. In June, 1923, Raymond M. Cauthorn, who was a few months less than 21 years old, was working for the defendant company, and while engaged, with other workmen, in constructing a tank, came in contact with a live electric wire, and was instantly killed.

His parents, the plaintiffs herein, instituted this suit under the Employer's Liability Law of this State, and claimed compensation in the sum of $5400.00, payable in 300 weekly installments of $18.00 each, from July 3rd, 1923, with legal interest on said installments from their respective maturities.

At the time of his death, the young man was receiving wages of $6.00 per day.

In the District Court, there was judgment for the plaintiffs as prayed for, and the defendant has appealed.

It is conceded by counsel for both parties that the sole issue presented is the question of dependency of the plaintiffs upon their son for support at the time of his death.

The plaintiffs live in the village or town of Doddridge, Arkansas, and own, unencumbered, 30 acres of land in Doddridge, on which their home is situated. Of this land, six acres are in cultivation as a truck and dairy farm, on which they raise vegetables for their own use, and feed for their stock. They own two mules, one horse, and ten head of cattle, two of which are milk cows. Their chief source of income is from milk, butter, eggs and chickens, which are produced on this land.

In January, 1922, the plaintiff, Mr. Cauthorn, purchased 126 acres of land, lying across the river from Doddridge, for $2530.00, of which $874.00 was paid in cash, and for the balance of the purchase price he executed five notes, payable in five annual installments of $331.20 each, with interest at 7% from date. Of this tract, there are some 16 or 20 acres cultivated in corn and other crops, and about 30 acres in hay or medow land. The balance is wild, or timbered land. The plaintiff rents the cultivable land on this tract and has, since he purchased it, received but a small amount from it—about $30.00 in 1923.

The plaintiff was at the time of the trial 58 years old, and his wife was 47. His health is fairly good, and he is fairly vigorous for a man of his age. He cannot do much more than half a day's plowing at one time. He says his general health is good, but "I just haven't got the power; it is worn out just like any other old piece of machinery." His wife has kidney trouble, but in other respects, her health is reasonably good.

Since the death of the son referred to above, his family consists of one son, 33 years old, and three daughters, one married and living in her own home, and two unmarried, one 20 and the other 9 years old, living with their parents. Until some eighteen months before his death, the young man lived with his father and assisted him with the work on the little farm, but being convinced that he could make more by working in the oil fields, he went there. When he left home, however, he promised his father that he would assist him in paying for the 126-acre tract, and a few months before his death he sent his father $100.00 to help him pay the first note due on the property. The letter in which the money was sent is in evidence in the record. His father, however, having some other pressing debts to pay, used this $100.00, with the consent of the holder of the note, to discharge them. The young man was killed a few months after the first note became due, and the proof shows that now two of

the notes are due and unpaid, and the plaintiff testifies that he has no means of paying them, or the three remaining notes, or the interest or taxes. He says he relied upon his deceased son to assist him in paying for the place, and was dependent upon him to that extent.

The contention of defendant's counsel is that the understanding between the plaintiff and his deceased son was that the plaintiff, the son, a nephew—whom it appears the plaintiff had raised—and a married daughter, were to assist in paying for the 126-acre tract, .and were then to own it together. And they argue that the amount contributed by the deceased was not a contribution to the father, but a simple investment for his own benefit. The testimony does not bear out this contention. The plaintiff was asked if he intended to deed this place to his son after it was paid out, and replied: "No, sir, no more than the balance of them." * * * "The understanding was that it was to be paid out by all of us and then divided." "That was the only chance for me to save it;" He promised to help me pay for it; after he was killed, I had no help." Q. "'It was intended to be divided among the various children?" A. "It would ·have stayed in the family as long as we lived."

Whatever understanding there was about the matter was a verbal one. The deed to the land is a straight out sale to the father.

The testimony further shows that after the young man left home, he sent his father $50.00 at one time, and gave $10.00 and $5.00 at other times; that he gave his father the shoes and hat which he wore at the time of the trial, and had given him other articles of clothing—a nice jumper, and, in the words of plaintiff, "just such things as a boy would send home to his parents." He also gave his sister—then a minor at school in El Dorado, $20.00, and bought her books and some clothes.

A point is sought to be made of the fact that when the plaintiff was asked if he was dependent upon his son for this money and clothing, he answered that he was not. He appears to think that because he did not ask for them, because the son, under the promptings of filial duty, voluntarily gave them, he, the father, was not dependent upon the son for them.

Mr. Carter, a representative of the Indemnity Company—the real defendant in the case—went to Doddridge to investigate the plaintiffs' condition with reference to his dependency and was a guest in plaintiffs' home while there. He describes conditions as he found them—the home, the truck farm, the fat mules, the several cows, which he says were fine ones. We do not understand that there was any display of lavishness or luxury, but that plaintiff and his family lived well and comfortably, but frugally; that the plaintiff and his family, by their thrift and industry, were able to secure from the small farm the ordinary necessities and comforts of modern rural life.

Mr. Carter testifies that plaintiff stated· to him that he was not dependent upon his son for support. Plaintiff admits this, but says he qualified the statement by saying that he was dependent upon his son for assistance in paying off the debt on the 126-acre tract.

It appears that there was in the possession of the defendant a written statement by the plaintiff, presumably to one of its representatives, with reference to the condition of the plaintiff. It was not introduced in evidence, and there is no explanation of the failure to introduce it. The

presumption is that it would have corroborated the testimony of plaintiff.

The effort of defendant Company appears to be to show that the plaintiff has not been reduced to a condition of actual present poverty and want by the death of his son, and it has done this. The language of the law is that the beneficiary is entitled to compensation if he is actually dependent "to any extent," and the Supreme Court and this Court have repeatedly repudiated the suggestion that actual, absolute, present dependency was a necessary condition to the right of recovery.

In the case of Gregory vs. Standard Oil Co., 151 La. Reports, page 227, 91 South. 717, the court, after citing a number of cases from other states construing statutes on the question of dependency, said:

"The statutes which the Courts had under consideration, in the cases cited, are not dissimilar to ours in any substantial respect. Indeed, we are persuaded to believe that our statute is much more liberal than the Federal statute. The words of the latter statute (Federal statute) are: 'The next of kin dependent upon such employee.' Whereas the language employed in our statute is: 'Actual dependence to any extent.' Under the Federal statute, it might well be said that dependent means that the beneficiary could not maintain himself without the aid of the deceased relative; that he was dependent on him for support and maintenance; and yet the Courts have consistently refused to apply such a literal interpretation. Our statute does not require that the father and mother should be shown to be absolutely dependent on their son for support before they can recover compensation on account of his death. The only requirement is that they should be actually dependent to any extent, that is to say, to some extent. The phrase 'at the time of the injury and death' cannot be so construed as to mean at the very moment of the death of the employee. It is broad enough to cover a reasonable period prior to the death, as well as a reasonable expectation of pecuniary assistance during the continuance of the son's life."

And in Heinzelman vs. Board of Commissoners, 149 La. 215, 88 South. 798, it was said:

"Dependent to any extent" is a very broad term, and seems to us to include necessary aid furnished for the discharge of any legal obligation, as well as aid required merely in supplying the personal wants of the recipients."

In Hamilton et al. vs. Texas Co., 151 La. 692, 92 South. 301, the plaintiffs were the parents of six sons, aged 20, 17, 15, 12, 10 and 9 years, respectively. Two of the sons and the father were working for the defendant company in the oil fields. They pooled their wages, which were spent in maintaining the family. The total monthly wages earned by them amounted to something over $400.00. They were laboring people, lived in the country. The Court said it did not appear that they lived extravagantly or beyond what was reasonably appropriate and necessary to their station in life, and it was said:

"Of course a family of eight could have existed on less than that which was earned, but we do not believe that it was intended under the compensation statute that dependents should be denied its benefits, except in cases of actual want and suffering."

To the same effect, see decisions of this Court in Davenport vs. Standard Oil Co., decided in February of this year, and Hand vs. Gulf Refining Co., No. 1534 on our docket, decided in 1921.

We are satisfied that the plaintiffs here are clearly within the statute as interpreted by the Supreme Court and by this Court, and the judgment appealed from is accordingly affirmed.

### OPINION ON REHEARING.

CARVER, J. The facts of this case are fully stated in the original opinion handed down by Judge Porter. Counsel for defendant does not dispute the facts as found by the court, but earnestly contends that the decision reads out of the workmen's compensation law the words "for support" and the words "at the time of the death". He admits that plaintiffs were dependent on their deceased son for assistance in paying for the 126-acre tract on which was owing at the time of the trial $1650.00 besides interest, much of which was due, but he draws a distinction between such a dependency and a dependency "for support", insisting it is only the latter kind of dependency that entitles plaintiffs to recover. He also insists that such a dependency must exist at the time of the death, and argues that such is not the case here.

He virtually admits that the decision is within the doctrine of previous cases decided by this court, (the Davenport and Hand cases cited in the opinion) but earnestly argues that those decisions are unsound because of the same reasons urged against the decision herein, namely: That in them no effect was given to the words "for support" and the words "at the time of the injury and death", which words are found in the statute. He also intimates, if he does not clearly claim, that the decisions of the Supreme Court in Gregory vs. Standard Oil Company, 151 La. 227, 91 South. 717, Hamilton vs. Texas Company, 151 La. 692, 92 South. 301, and Heinzelman vs. Board of Commissioners, 149 La. 215, 88 South. 798, are open to the same criticism.

Of course, we are bound by the decisions of the Supreme Court, and would feel obliged to follow them whether we agreed with them or not.

Of course, too, we should have due regard to the doctrine of stare decisis, and should not overturn the jurisprudence established by our predecessors unless we were clearly convinced that they had erroneously construed the statutes.

We have carefully examined all those decisions in the light of counsel's criticism of them and our conclusion is that they correctly interpret the law. We also think that the present case falls within the principles announced in those cases.

There may be cases in which a clear distinction might be drawn between the parents' need "for support" and their needs for meeting obligations incurred in speculative enterprises; but we think the facts in this case present no such situation. The father being 58 years old and failing, the mother 47 and sickly, there being two girls, one wholly and one partially dependent on their parents for support, there being debt on the property amounting to over $1700.00, a considerable part of which was due, there being other debts amounting to $150.00, besides taxes, and this after paying in on debts $300.00 received one third each from the son, a nephew and a son-in-law, there being no money on hand to meet those obligations, and the revenues from both properties not exceeding the current needs of the family, the productive powers of the parents being on the decline and those of the son on the increase, the son an industrious and trustworthy boy having promised assistance on the new purchase and having actually made contributions not only for that special purpose but also of items of money, clothes, books, etc., coming strictly under the head of support, we think the affairs of the father had been

so merged that they must be treated as a whole and that no clear distinction can be drawn between his needs for meeting the balance due on the land purchase and his needs for the support of himself and family, notwithstanding the admission to the contrary made by himself and wife and his daughter.

Certainly the $300.00 above mentioned, obtained from the son, nephew and son-in-law to pay on the new purchase had to be diverted and used to pay on other debts, leaving some of those as well as all of that on the land purchase unpaid.

The situation at the time of the death being as above outlined, we think there was dependency "for support at the time of the injury or death" and that the case falls strictly within the terms of the statute. It is much stronger, we think, than the Hand case, No. 1534 on the docket of this court.

For these reasons it is decreed that the judgment of the court heretofore rendered be, and the same is hereby reinstated, and made the judgment of this court.