No. 2757

Second Circuit

———

HAMMONS v. EDWARDS

———

(April 8, 1927. Opinion and Decree.)
(May 13, 1927. Rehearing Refused.)
. (July 12, 1927. Writ of Certiorari and
Review Denied by Supreme Court.)

———

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 160.**

Under the Workmen's Compensation Act No. 20 of 1914 and amendments, where the deceased employee had not severed his connection with the family circle and his financial relation towards his parents were practically the same after his majority as before, contributing his support to some extent to his parents, it is sufficient to class his parents as dependents under the act.

2. **Louisiana Digest—Master and Servant —Par. 160 (j), 160 (l).**

Where an employee was struck on the head which caused him pain but did not prevent him from continuing his work during the day, five days thereafter becoming very ill, dying later from spinal meningitis, the testimony of the physicians being that the wound might have caused the disease to assert itself, the evidence indicating that further evidence might clarify the situation, case will be remanded for further trial.

Appeal from the Eighth Judicial District Court of Louisiana, Parish of Winn. Hon. F. E. Jones, Judge.

Action by Columbus J. Hammons and wife against Kinman & Edwards.

There was judgment for plaintiffs and defendants appealed.

Judgment reversed and case remanded for further trial.

Julius T. Long, of Shreveport; A. Leonard Allen, of Winnfield, attorneys for plaintiffs, appellees.

Thornton, Gist & Richey, of Alexandria, attorneys for defendants, appellants.

WEBB, J. Roy A. Hammons, a young man, about twenty-two years of age, while in the employ of defendants, Kinman & Edwards, who were operating a sawmill, struck his head against a rafter and about five days thereafter he became ill and his illness reached an alarming stage on the second day when he was taken to the State Hospital at Shreveport where he died after about twelve days.

This action was brought by the parents of the deceased to recover compensation under Act 20 of 1914, the Employers' Liability Law, and defendants appeal from a judgment rendered against them for compensation at the rate of sixty-five per cent of the weekly wages of decedent for a period of not exceeding three hundred weeks.

It is urged that the judgment was erroneous and should be reversed on the following grounds:

First, that the evidence does not establish that the plaintiffs were dependent upon their son within the meaning of the statute.

Second, that the evidence does not establish that death resulted from the accident.

Considering these contentions in their order.

I.

The plaintiffs own a small farm of one hundred and twenty acres, of which thirty or forty have been cleared, where they have lived for about twenty years and reared a family of six boys, all of whom were of age at the time of the death of Roy, with the exception of two, only one of whom, however, appears to be of any assistance to plaintiffs who are, respectively, fifty-seven and fifty-four years of age.

While the evidence does not show with certainty the revenues of plaintiffs, we gather that their financial circumstances while never having reached the stage where they did not have the necessities has always been precarious, although they had the assistance of their children during the years of their minority, and that with their advancing years and their children becoming of age and leaving home, the situation has not improved.

It is shown, however, that after the majority of Roy Hammons, the deceased, he cultivated a crop on the home property and gave to his parents a larger portion of the crop, and that he had also made some contribution to one of his minor brothers and to his father, and that he had continued to reside with his parents and had contributed fifty cents a day to the family.

The deceased earned a small amount and, while the contributions made by him were small, yet it is clear that he had not severed his connection with the family circle and that his financial relations toward his parents were practically the same after his majority as before, and we think that the deceased is thus shown to have contributed to some extent to the support of plaintiffs. (Gregory vs. Standard Oil Co., 151 La. 228, 91 South. 717; Hamilton vs. Texas Company, 151 La. 692, 92 South. 301; Couthorn vs. Cypress Tank Co., 1 La. App. 100; Nelson vs. Henderson Iron Works, 1 La. App. 332.)

II.

Relative to the connection between the death of Roy Hammons and the accident, the evidence shows that the young man died with an infectious type of spinal meningitis, and it is contended that the wound received from the accident was a contributing cause to the development of the disease; that is, that there was present in decedent's body at the time of the accident germs of the disease and that the wound received had in some manner affected him so as to permit the development of the disease.

While the evidence indicates that the germ of the disease is transmitted through the air and that even though one may receive the germs of the disease that infection or multiplication of the germs does not necessarily take place, but it does not show in what manner the infection takes place or the disease asserts itself.

The evidence shows that the decedent, while carrying a small piece of lumber, struck the right side of his head against a rafter causing a contusion about three-quarters of an inch long, and that decedent put something on the wound, and while the physicians who treated decedent

all concur in the opinion that decedent had an infectious type of spinal meningitis, there was a difference in their opinion as to whether the wound contributed to the disease or rather the probabilities of such, having been the case, but the evidence not showing in what manner the disease asserts itself or what causes the germs to multiply or remain dormant, it is difficult to determine the exact degree of difference between their opinions. ·

All of the physicians, however, apparently agree that where the germ is present in the system the infection may be set up or the disease assert itself from the effect of a wound or blow on the head, and that the more severe the wound the more probable that the infection could be attributed to the wound; but it is not clear from the evidence whether the infection or onset of the disease would follow from the general weakened physical condition or loss of vitality of the subject (which we assume would generally be in proportion to the severity of the wound) or from the injury to the tissues of the head, which without the presence of the germs would or would not cause serious discomfort to the subject, dependent upon the seriousness of the wound.

However, we think that the trend of the testimony given by the physicians was that the infection might be set up following the impairment of the tissues and that the probabilities would increase with the severity and possibly the extent of impairment; but the evidence does not show any other impairment of the tissues than indicated by the contusion, and it is not claimed that the contusion indicated a serious impairment, and while the physicians called by plaintiff were inclined to the view that there must have been other impairment than indicated by the contusion, however the x-ray examinations did not show any other impairment, and the only other indication that the wound was of a more serious nature than indicated is the evidence of one of the sons of plaintiffs that decedent complained of his head continually. However, it is admitted that the accident occurred in the morning on the 9th of December and that decedent continued to work the balance of the day and through Thursday and Friday and until the mill shut down at noon on Saturday, and it is not shown that he made any complaint while at work until Saturday morning when he complained of a headache.

Conceding that the germ of the disease was present at the time of the accident (which conclusion seems to have been reached by the physicians from the fact that the type of the disease was infectious and that there were not any cases of the disease in the community) and that the infection could be set up by an impairment of the tissues of the head, and considering that the impairment of the tissues is not shown to have been serious, we think that the utmost limit which could be given to the testimony of the physicians is that the wound might have caused the disease to assert itself.

We do not think that under such proof the plaintiffs are entitled to recover.

In Haddad vs. Commercial Motor Truck Co., 150 La. 327, 90 South. 666, the court said:

"In a proceeding under the Workmen's Compensation Act to obtain compensation

for the death of a servant, it is not enough to show that death was probably the result of an accident, but that such was the case must be made out to a legal certainty."

And the opinion in Hicks vs. Meriden Lumber Co., 152 La. 975, 94 South. 903, is to the same effect.

We think that the present case is distinguishable from Behan vs. Honor Co., 143 La. 348, 78 South. 589, and Fox vs. United Chemical Co., 147 La. 865, 86 South. 311, cited by plaintiffs, in that in those cases the injury received produced immediate disability, which was continuous, and the disease resulting from latent germs became active during the continuance of the disability, and the conclusion follows, in default of evidence to the contrary, that the accident had contributed to the disease, or had caused the germs to become active, while in the present instance the wound did not appear serious and there was not any immediate disability and the evidence which shows that the disease might have been set up by the wound, we think, leads to a very different conclusion than if disability had immediately followed the accident and the disease had set in during the period of disability.

The probability of the disease having been set up or contributed to by the wound to be the basis of a judgment should be such strong probability that excludes other probabilities, as in the cases cited, or the evidence should at least show that the wound was of a serious character where it appears that the only reason assigned for connecting the wound with the flare up of the disease is that wounds sustained in a certain locality or by certain tissues might cause the disease to ¹are up, the probabilities increasing with the severity of the wound.

The evidence indicates, however, that further evidence can be offered showing the connection between the wound and the disease or at least clarifying or explaining the testimony offered, and we think the cause should be remanded for further trial.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and set aside, and the case be remanded for further trial, all costs to await trial.