No.——

First Circuit

KAYS KASH STORE v. HILDERBRANDT

(May 8, 1928.   Opinion and Decree.)
(June 12, 1928.   Rehearing Refused.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Appeal—Par. 625, 626.**
The finding of the trial court as to the credibility of witnesses and matters of fact being clearly correct is affirmed.

Appeal from the Parish of Calcasieu. Hon. Thos. F. Porter, Judge.

Action by Kays Kash Store against Jack C. Hilderbrandt.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Robert R. Stone, of Lake Charles, attorney for plaintiff, appellee.

W. C. Braden, of Lake Charles, attorney for defendant, appellant.

MOUTON, J.  In this case, which is one of fact, the District Judge rendered judgment for plaintiff in the following opinion:

"The plaintiff, Kay's Kash Store, alleged that they purchased a 'Superior' refrigerating machine from the defendant, Jack C. Hilderbrandt, for $465.67, paying therefor in cash $124.50, and giving his note for the balance $331.17. The plaintiff further alleged that the machine proved un-

satisfactory, and that it was taken by the vendor, who agreed to refund the cash part of the purchase price, and who cancelled and surrendered the note for the unpaid part of the purchase price.

"Upon the defendant's refusal to return the cash installment, the plaintiff brings this suit to recover same. The defendant in his answer sets up an agreement whereby the machine he had sold the plaintiff was to be removed, and another installed in its place, and the money which the plaintiff had paid on the old machine was to be applied on the purchase price of the new one.

"The case turns altogether on the question of the veracity of the witnesses. The plaintiff testified positively that he entered into no agreement whereby the defendant was to install a second machine. On the contrary, he testified that the defendant promised to return him the money he had paid on the first machine, and that Mr. T. G. Trotti, who held the plaintiff's notes, turned them over to him marked 'cancelled,' and that Mr. Trotti told him that there had been a settlement with the people who had sold Mr. Hilderbrandt the machine he had taken back from Kay's Kash Store. Mr. T. G. Trotti, who discounted the notes of Kay's Kash Store for the unpaid part of the price of the first machine, testified that while he had no personal knowledge of the transaction, and while his records showed no authority for his returning the notes to Kay's Kash Store, he felt certain that he had such authority, or he would not have surrendered the notes. At any rate, the surrender of the notes thus given for the unpaid part of the purchase price of the first machine, which was unsatisfactory, was approved by Mr. Hilderbrandt, for he and Mr. Trotti had a settlement as to the surrender.

"Mr. Hilderbrandt testified as to the subsequent contract between him and the plaintiff, whereby he was to furnish another machine to take the place of the one which would not satisfactorily refrigerate the plaintiff's counter. Mr. Hilderbrandt denied positively any agreement to return any money paid him by the plaintiff. Mr. Hilderbrandt, in paragraph 10 of his answer, which was duly sworn to by him, admitted that he returned to the plaintiff the notes executed by the plaintiff in part payment of the first machine. In Mr. Hilderbrandt's testimony he denied authorizing, or having anything to do with the return of these notes to the plaintiff, and testified that he would not have permitted their return had he known that Mr. Trotti was about to do so.

"The fact that the defendant's testimony on this material point is in direct conflict with the sworn admission in his answer, seriously affects the weight that would be given his testimony.

"Mr. Sullivan, the brother-in-law of Mr. Hilderbrandt, testified that there was an agreement between the parties whereby the first machine was to be taken out and another machine installed instead. When asked what kind of a machine the defendant was to install for the plaintiff, the witness replied: 'I guess he told him, I didn't hear it.' This witness testified that at that time Mr. Hilderbrandt was handling only 'Superior' machines, which was the kind of machine that had been furnished to plaintiff in the first instance, and which had been unsatisfactory.

Mr. Berrian testified in substance as did Mr. Sullivan.

"Mr. Hilderbrandt, the defendant, admitted that when the first machine, a 'Superior' was taken out, the plaintiff re-

fused to permit another machine of that same make to be installed, and at that time, according to the testimony of Mr. Sullivan, the defendant was handling no machine other than the 'Superior' although later the defendant handled 'Copeland' machine, and it was this kind that he tendered the plaintiff.

"All three of the defendant's witnesses agreed that after the first machine had proven to be lacking in refrigerating ability and had been removed, the plaintiff refused to permit any machine to be installed until he had tried out the counter with ice. The plaintiff's explanation of this statement is that he didn't want any machine at all until he had tried the refrigerator counter with ice.

"I believe that the reason for testing the counter with ice was to see if it could be refrigerated with ice, and if it could be properly cooled with ice, the plaintiff did not want any machine at all after the machine that he first purchased had failed to properly cool the counter. Even at this time plaintiff still refrigerates his counter with ice. The defendant testified that at the time of the alleged agreement to put in a second machine he was in a position to put in either a 'Copeland' or a 'Superior.' Although the defendant depended on the alleged subsequent contract above set forth, he tried to and succeeded in getting in some evidence from himself to the effect that the original contract gave him the right to install any kind of machine he wanted to, so long as it refrigerated the counter. This is denied by the plaintiff, who claims to have purchased a 'Superior' machine.

"I believe that the record shows that plaintiff is right in his contention. It would be most unusual for a man to make the contract claimed by defendant, and certainly it would be most unusual for two parties to agree on a sale of a "Superior" machine, with the right to furnish any other machine in case that one proved unsatisfactory, especially when defendant's own witness, Sullivan, testified that the defendant at the time handled only the 'Superior' machine.

"The plaintiff testified to the effect that the sale of the first machine was cancelled, and the cash payment was agreed to be refunded him. This evidence is strongly corroborated by the fact that the notes given for the unpaid part of the purchase price of the first machine were returned to the plaintiff at the instance of the defendant.

"The effect of defendant's testimony is materially weakened by the fact that he attempted to change his sworn admission in his answer on this point. That leaves the testimony of the defendant's brother-in-law and that of his former employee, as opposed to that of Mr. Kay who is supported by the presumptions of fact already recalled, the burden of proof being upon the defendant, to establish by a fair preponderance of the evidence the subsequent agreement.

"Carefully considering the evidence of all the witnesses, and my knowledge of them, and the presumptions of the inferences of fact detailed, I have reached the conclusion that there was no subsequent agreement whereby the plaintiff agreed to purchase any machine, but on the contrary, the first sale was cancelled and annulled with an agreement to refund the cash purchase price of same."

The controverted questions between the parties to this litigation are clearly stated in the opinion, and after a careful examination of the record, we find that the Court has made an extensive and judicious analy-

sis of the evidence, and has correctly solved the issues presented herein.

In the first opinion the Court rendered judgment for defendant, and on rehearing reversed its original finding by decreeing judgment in favor of the plaintiff. Counsel for defendant, in a very able presentation of his contentions, claims as the contract is restricted to one of fact, the Court of necessity gave evidence to the witnesses for the defendant, which cannot be affected, he contends, by the subsequent opinion of the Court, in which he makes reference to the veracity of the witnesses in reaching his final conclusion. The first part of the opinion, taken independently of the comprehensive views that follow, would seem to support the assertion of counsel in that respect. Further on, however, in the opinion, it will be noted that the Court, in arriving at the conclusion, was not guided solely by his knowledge of the witnesses, but was also led in that direction by the "presumptions of the inferences of fact detailed" in the evidence. We have indulged in this allusion to this particular feature of the case, because counsel for defendant in his well prepared brief, stated that he would not prosecute this appeal if the case for its proper solution depended exclusively on the question involving the veracity of the witnesses, on which he concludes the Court altogether based it opinion. This is not however, the case, as the findings below are not grounded exclusively on the credibility of the witnesses, but actually find a larger basis in the inferences of facts and circumstances which guided the Court in fixing liability on defendant. We have reached the same conclusion after a careful reading of the record, and as we think, a proper appreciation of the evidence.

Even if we were to conclude that the reversal by the Court of its first finding left the veracity of defendant's witnesses unaffected by the second opinion, still we find there remains, taking into consideration the testimony of Berrian a witness for defendant, a preponderance of the evidence showing that if plaintiff had really agreed to accept another machine, this agreement would be effective only in case plaintiff after testing the counter with ice, found that it would respond to mechanical refrigeration. In this regard we are considering the case of defendant in its most favorable aspect, but we cannot, however, be dislodged from the conviction that this issue has been correctly determined adversely to his contentions.

The defendant pleads, and admits, that the notes that had been given by plaintiff for the credit portion of the price of the machine had been returned to plaintiff and cancelled. These notes were in the hands of Trotti, and no doubt were returned at the direction or with the consent of defendant, who claims however, that the machine he originally sold was, as per agreement with plaintiff, to be substituted by a new machine. If such had been the contract it cannot be believed that the notes would not have been retained to secure the credit portion on this new machine which defendant says, would, under the agreement, have been substituted for the identical price that had been fixed for the first refrigerator. In his answer defendant says he stated to plaintiff that the cash payment he had received on the price of the first machine he would allow as a credit on the new machine. This part of the answer makes it quite evident, that if such had been the agreement, the notes would not have been returned, nor the original contract cancelled, but would have been retained to prevent the deferred payments on the substituted machine. These considerations, grounded as they are on the pleadings of the defendant, and

44 La. App.

the facts of record, have reinforced us in our conviction that the findings below are legal and just.

Counsel for defendant has made such an earnest appeal to this Court, that we have gone extensively into' this case even at the risk of burdening the record with an unnecessary lengthy decision.

There are no legal reasons that we can find to justify a reversal, and the judgment appealed from is therefore affirmed with cost.