No. 3903

**Second Circuit**

HOY v. T. S. GRAYSON LUMBER CO., INC.

(November 7, 1930. Opinion and Decree.)
(December 23, 1930. Rehearing Refused.)
(February 2, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

John T. Campbell, of Minden, attorney for plaintiff, appellee.

John B. Files, of Shreveport, attorney for defendant, appellant.

ODOM, J. Eva Hicks was an employee of the defendant company and while at work in February, 1929, he received an accidental injury to his foot. He died in August following. Plaintiff, the mother of Hicks, brought this suit under section 8, Act No. 20 of 1914, as finally amended by Act No. 242 of 1928, alleging that her son died as the result of the injury; that he left no widow or descendants; and that she was wholly dependent upon him for support. She asks for compensation, as provided in the act.

The suit was filed in the parish of Webster. Defendant excepted to the jurisdiction of that court on the alleged ground that its domicile was in the parish of Caddo at the time the suit was filed. As there seems to have been no ruling on this exception, and as it is not urged here, we shall not notice it. Defendant also pleaded prescription of one year. Reserving its rights under these exceptions and pleas, defendant answered, admitting the employment, injury, and death of the said Hicks, but denied all other allegations, and especially denied that his death was due to the accident or that plaintiff was dependent in whole or in part upon her son.

There was judgment for plaintiff overruling the plea of prescription and awarding plaintiff compensation at $5.85 per week for three hundred weeks. Defendant appealed.

## ON THE PLEA OF PRESCRIPTION

Section 31, Act No. 20 of 1914, as finally amended by Act No. 85 of 1926, reads as follows:

"That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death of the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident, proceedings have been begun as provided in Sections 17 and 18 of this act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment."

The employee, Eva Hicks, was injured in February, 1929, and died in August of that year, or within one year from the date of the accident. He and his employers did not agree upon the payments to be made under the act, nor did he begin proceedings to recover such payments prior to his death. His mother filed the present suit on February 20, 1930. There is some conflict in the testimony as to the date on which the employee was injured, but our conclusion is that he was injured more than one year prior to the date on which this suit was filed. The suit was filed, however, in less than one year from the date of his death.

Counsel for defendant contends that plaintiff's action is barred under the letter of the law. His contention is that, in all cases where dependents were entitled to compensation under the act, they must bring their action for such within one year from the date of the accident, or be forever barred. We do not think so. To hold that, under section 31 of the act, suits by dependents are barred by one year from the date of the accident, would be in effect to hold that in some cases, at least, they could not recover at all. To illustrate: Suppose an employee received an injury in the course of his employment which produced death one hour before the expiration of one year. The act provides that dependents are entitled to compensation where death ensues within one year after the accident. In such cases, the dependent widow for the benefit of herself and minor children, if she had any, or the dependent mother, as the case may be, would have just one hour in which to bring suit or be "forever barred." Or to reduce the proposition to an absurdity, let us suppose that death occurred five minutes previous to the expiration of the year. In such case, it would be impossible for a widow or a mother to bring suit within one year. They would therefore have a right without a remedy. The act gives dependents a right and a remedy, and their remedy is to bring their action within one year from the date of the death and not from the date of the accident. Their cause of action rises, not from the accident itself, but from death, caused by the accident. They have no cause or right of action unless death ensues and none until then.

The holding as to prescription in the case of Guderian v. Sterling Sugar & Railway Co., Limited, 151 La. 59, 91 So. 546, 547, is applicable here, although the facts were different. There the suit was under the Compensation Acts, and prescription of one year was pleaded. In that case the plaintiff sued for the loss of an eye, which resulted from a blow which at first produced no injurious effects upon it, but la-

ter caused its loss. Plaintiff instituted his suit more than one year after the date on which the blow was struck, but less than a year from the date of the loss of the eye. The court said:

"Plaintiff's cause of action did not arise until he lost his eye. It is self-evident that one cannot sue until his cause of action arises. Concerning the prescription of one year applicable to offenses and quasi offenses, prescribed by article 3536 of the Civil Code, this court, in South Arkansas Lumber Co. v. Tremont Lumber Co., 146 La. 61, 83 So. 378, said:

" 'A person cannot bring suit until his cause of action has accrued, and until a cause of action has accrued, prescription cannot run against it. Jones v. T. & P. R. R. Co., 125 La. 542, 51 So. 582, 136 Am. St. Rep. 339.'

"While the above was said in relation to another, though a kindred prescription, yet the fundamental principle involved is equally as applicable here as it was there. To the same effect as the South Arkansas Lumber Co. case is the case of Rady v. Fire Insurance Patrol, 126 La. 273, 52 So. 491, 139 Am. St. Rep. 511."

The plea of prescription was properly overruled.

### ON THE MERITS

The only defenses urged are that the death of the employee was not due to the accident, and that plaintiff was not actually dependent upon her son either wholly or in part.

Deceased was working for defendant as a log cutter and accidentally cut his foot with an ax. The wound was not serious, but soon became infected, and a physician, Dr. Kilgore, employed by defendant, treated him. Dr. Kilgore says the wound was infected when he first saw the patient, but that the wound healed and the patient was discharged about March 25th. The patient was subsequently treated by other physicians who failed to give him relief

and he was sent to the Charity Hospital in Shreveport where he remained about three weeks, without relief, and was sent to his mother's home, where he died on August 8th.

In support of its contention that death was not due to the accident, defendant relies solely upon the testimony of Dr. Kilgore to the effect that the wound had healed when he discharged the patient on March 25th, and that death was due to causes wholly disconnected with the accident.

It is undisputed that, immediately after the wound became infected, deceased took to his bed and was so seriously ill from that date that he was never able to leave it, except possibly to sit up for short intervals during the early stages, and that prior to the accident he was a strong, healthy man. This leads strongly to the presumption that there was some connection between the accident, from which infection arose, and the death.

The testimony conclusively shows that death was caused by osteomyelitis, or inflammation of the bone marrow or the bones and the marrow, and that this disease was caused by infection. Dr. Kilgore says the wound was infected when he first saw the patient, that pus formed, and that germs got into the foot. But he says the wound had healed from the outside when he discharged him, and that there was no infection at that time, although he says that even at that time the patient was complaining. "He complained of pain in the head, his eyes and head, and then his chest and side—complained all over." He says that the patient had influenza, followed by pneumonia, and that, in his opinion, died of tubercular abscesses, although he did not see him between the date he

discharged him on March 25th to August 8th, when he died. But the physicians who treated him later and who were in better position to know stated positively that death was due to osteomyelitis, and we accept that opinion.

Dr. Kilgore's own testimony, however, shows that in his opinion the osteomyelitis may have been caused by the infection from the wound, even though it had healed from the outside. He said:

"In a certain number of days, it would not have been entirely healed, but his inflammation subsided there, and it could have been taken up by the circulation and deposited in some of the long bones—in the marrow of some of the long bones—and very likely would have been more apt to be—well, it would have had to be in the long bones where there is bone marrow. That is what myelitis is."

There is, therefore, no difference between the opinion of Dr. Kilgore and that of other physicians who testified (and the generally accepted theory) on this point; that is, that infection in one part of the body may be and frequently is taken up by the circulation, carried to and deposited in other parts of the body. Infection from a tooth, for instance, may affect the eyes, the heart, the kidneys, the prostate, and may even cause sciatica. In the present case, the disease, osteomyelitis, manifested itself in the hip and lower vertebræ and, in the opinion of the physicians (except Dr. Kilgore), it was caused by infection carried from the foot to those parts of the body and there deposited.

As against the testimony of Dr. Kilgore that the foot had healed, we have to the contrary that of all the lay witnesses who attended the patient and who say that the foot was always sore. Dr. French, who examined the patient on April 9th, shortly after he was discharged by Dr. Kilgore,

said the foot was then very tender and swollen, "externally, it appeared to be healed, but there was some internal involvement." His opinion was that death resulted from the infection from the wound.

Dr. Benton examined the patient in the latter part of June and found him in the terminal stages of infection, "mostly in the spinal column and sacrum; the bones had broken down and an abscess had formed and he was running temperature. He was emaciated and toxic," and, after hearing a history of the case, he said:

"Why, I would attribute the osteomyelitis there to the infection as a result of the injury."

From all this, we are convinced and hold that the disease from which the employee died resulted from infection caused by the injury which he received while at work.

### AS TO DEPENDENCY

Plaintiff proved to our entire satisfaction that she was actually dependent, at least in part, upon her son for support, and that up to the time he was injured, and for more than a year prior thereto, he had given to her, not only money, but groceries, and had paid the taxes on the tract of land on which she was living. She and her brother testified that he had contributed about $400 per year. He could not have contributed that much, for that was more than he was making. It may well be said, as contended by counsel for defendant, that this shows she was disposed to exaggerate and misrepresent the facts. We think, however, that their exaggeration as to the total amount contributed should be attributed more to ignorance than to an intent to willfully falsify. Neither plaintiff nor any of her witnesses pretended to itemize the amounts contributed or to state the exact dates of the contributions. But plain-

tiff, her brother, and three other witnesses testified positively that deceased conscantly and regularly contributed to her support in the way of provisions and money, and their testimony is not contradicted, except inferentially.

Deceased was about forty years old and had never married. For a time prior to his injury he lived in a house to himself, on which he paid no rent, and a woman lived with him and did his cooking. The inference which counsel draws is that it took all he earned to keep up his own establishment. But the fact that he did live for a while to himself and that he had his meals cooked there is not sufficient to overcome the positive testimony that he did actually contribute to his mother's support all the while.

It is suggested that the mother was not in need of help and not actually dependent upon any one. We think she was. She is a colored woman nearly sixty years of age. She lives on a small farm in which, it seems, she owns a one-fourth interest. She had some cows and some chickens, but there is no testimony that she ever sold milk, butter, or eggs. She farmed with no one to help her, and some years made as much as one bale of cotton, other years less. She had had three husbands, but the last one abandoned her several years ago, and she received no help from any of them. She had one other son, but he had a family and contributed nothing to her support. She washed for her brother, who occasionally gave her as much as a dollar. It is probably true that, without assistance, plaintiff could and would have eked out a bare existence on this farm, but it is clear enough that she needed some help from outside sources. Under the law and jurisprudence, she is entitled to recover. Gregory et al. v. Standard Oil Co., 151 La. 228, 91 So. 717; Zeller v. La. Cypress Lumber Co., 9 La. App. 609, 121 So. 670; Cauthorn v. Cypress Tank Co., 1 La. App. 100; Nelson v. Henderson Iron Works, 1 La. App. 332; Rupp v. Reimann Co., 7 La. App. 635; Hammon's v. Edwards, 6 La. App. 752; Grant v. La. Sawmill Co., 6 La. App. 673.

The judgment appealed from is correct, and is accordingly affirmed, with all costs.