The lower Court has set forth the issues in this case and, in our opinion, correctly determined them in the following written opinion:
"This is a Compensation suit brought by Shores Winfrey against M.L. Mullen and his insurer, Massachusetts Bonding Insurance Company, as a dependent of his son, Virgil C. Winfrey, killed October 4, 1940, while working for Mullen. The only issues presented are dependency and amount.
"In appearance, plaintiff is the most dependent person the Court has yet seen. He is 74 years old and gravely crippled from many serious accidents. He at one time ran a ramshackle rooming house on Caddo Street, in Shreveport, but had given it up at the time of his son's death. There may be some practically worthless furniture in it now belonging to him.
"When plaintiff's son died the old man was living in a four-room shack on Caddo Lake, worth three or four hundred dollars, which Virgil had bought for him in 1939. There is an enclosed pasture, outbuildings, chicken-house and thirty or forty chickens. We think plaintiff testified truthfully that he cannot make a living off this place. He says that Virgil also bought him a little pick-up truck and gave him on the average $5.00 per week. His tenure of the shack is precarious, as his son purchased only the improvements, which are subject to the will of the landowner.
"Virgil was the eldest of four sons. Of the others, Edward, aged 33, is married and in the Army. Raymond resides here, but is unable to do hard work and is no help to his father. Woodrow, also, is in the Army, apparently unmarried. He says that none of his sons, except Virgil, ever contributed to his support, beyond a few presents, but that Woodrow has been sending him money from the Government since the first part of 1943. He does not say how much, but from the Service Officer here we learn that allotment to one parent runs from $37.00 to $50.00 per month.
"While the Act provides that when dependency ceases, payments stop, this is not plead or urged by defendants. It is not shown with definiteness when the payments began.
"Defendants offer no witnesses, contenting themselves with attacking plaintiff's credibility. They offer testimony and affidavits given by plaintiff in support of a previous demand by a woman with whom Virgil was living. Her demand was rejected, the Court finding she was not married to decedent. While the statements of plaintiff are contradictory of his present testimony, we think the facts above are a fair reflection of conditions in the Winfrey family at the time of Virgil's death and the trial of the case.
"In our former opinion, we allowed plaintiff $5.00 per week as a partial dependent. All parties prayed for a rehearing, which was accordingly granted. We took the view that the amount Virgil had contributed amounted to an average of $5.00 per week in money, the occupancy of the home and groceries furnished from time to time. The exact amount being impossible to determine, our allotment of $5.00 was an estimate which could not be accurately figured in accordance with the Act.
"Section 8, Sub-section 18, Par. 2 [Section 8, subsec. 2, Act No. 242 of 1928] provides that in case of death, compensation should be paid to the legal dependents of the employee actually and wholly dependent at the time of the accident and death. Where the dependent is a father, dependency must be proved by him. If he discharges this burden as to complete dependency, he is entitled under the Act to 32 1/2% of the son's wages. If claimants are only partially dependent, the weekly compensation shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee in the year prior to his death bears to the earnings of deceased at the time of the accident. To be wholly dependent, two conditions must exist: dependency on no one else, and *Page 729 
possession of no other consequential source or means of maintenance.
"There are many cases holding that people owning their own homes are not wholly dependent. Knox v. Washer, 153 Tenn. 630,284 S.W. 888; In re Derinza, 229 Mass. 435, 118 N.E. 942; In re McDonald, 229 Mass. 454, 118 N.E. 949, L.R.A.1918F, 493; Buhner v. Bowman, 81 Ind. App. 395, 143 N.E. 366.
"In Little v. Crow-Edwards Lumber Co., 9 La.App. 465, 121 So. 219, it is held that a farmer owning 160 acres of land yielding the bare necessities of life was partially dependent.
"In Gregory v. Standard Oil Co., 151 La. 228, 91 So. 717, parents owning a 40-acre farm were apparently found to be wholly dependent. To the same effect is, Cauthorn et al. v. Cypress Tank Co., 1 La.App. 100.
"In Boudreaux v. Myles Salt Co., 11 La.App. 480, 123 So. 907, and Nelson v. W.K. Henderson Iron Works, 1 La.App. 332, a parent was allowed compensation though he had previously sworn that he was not dependent.
"Considering the above authorities, we are of the opinion that plaintiff's physical condition is so helpless and his occupancy of the shack so temporary and precarious that he was wholly dependent upon his son. There is no showing that title to the shack was ever conveyed to him. Our former judgment is set aside and there is now judgment in favor of plaintiff and against defendants, in solido, for 32 1/2% of decedent's weekly wage of $30.37, or $9.87 per week for three hundred weeks. The first payment is to fall due October 11, 1940. Each weekly payment to bear legal interest from its due date. Defendants to pay all costs of this suit."
Defendants are now prosecuting an appeal to this Court.
After judgment was rendered below, defendants filed a motion for a new trial and the right to amend their pleadings for the purpose of showing that dependency had ceased because one of plaintiff's sons now in the United States Army had made an allotment to plaintiff who was receiving a check monthly from the Government. The motion was overruled below and, in our opinion, the lower Court was correct in its ruling.
Plaintiff's son, Virgil Winfrey, was killed on October 4, 1940, and the record makes it clear that plaintiff was wholly dependent upon him for support, and although the amount contributed by Virgil is not shown in exact figures, it is shown that he contributed at least $5 per week in money and also furnished some groceries, and that within the year in which Virgil died, he had sold a truck to a negro for $225 and had instructed him to pay that amount to plaintiff in money and labor in assisting plaintiff around the place furnished him to live in by the decedent. The uncontradicted testimony is that the negro paid the amount to plaintiff in money and labor.
Defendants contend that plaintiff partially earned a living out of a rooming-house he operated in Shreveport, but this contention is not supported by the testimony, as there is no evidence to show that plaintiff earned anything out of the rooming-house, which consisted of a shack that had been condemned. The testimony further shows that whether plaintiff or one of his sons operated the rooming-house, it was done at a loss.
This suit was filed October 1, 1941, and was not tried until June 11, 1943, due to the pendency of a suit by decedent's common-law wife, who was claiming compensation. The judgment was signed in this case on February 7, 1944.
Defendants did not offer any testimony to contradict the testimony relative to plaintiff's dependency, other than the Claim Agent of the insurance company, and that was only as to the credibility of plaintiff. Defendants rely entirely upon contradictions in the testimony of plaintiff and some of his sons on the trial of the suit of decedent's common-law wife and the present case. While there are some contradictions, to our minds, they are immaterial and the testimony as a whole shows beyond doubt that plaintiff was actually and wholly dependent upon his deceased son for a livelihood. It is certain that plaintiff's dependency did not cease until after another son went into the United States Army sometime in 1943. This testimony was gone into without objection and defendants had their opportunity to show when plaintiff started to receive checks from the Government and the amounts thereof. After this matter had been brought out without objection, the pleadings were enlarged and defendants could have offered any proof thereon they desired. They offered no testimony and did not ask for delay in the *Page 730 
trial to procure such testimony. If an allotment from a soldier can be considered as sufficient to take plaintiff out of the class of dependency, as provided in the Compensation Act of this State, defendants still have their right in another proceeding.
Counsel for defendants contend that the lower Court did not consider Act 242 of 1928, Section 8, Subsection 2 in rendering its opinion, but that it relied upon decisions rendered under earlier acts of the Legislature dealing with dependency, whether partially or wholly dependent. The opinion of the lower Court clearly shows that it did consider the difference in the earlier acts and Act 242 of 1928.
We find no error in the judgment of the lower Court and it is affirmed with costs.